[No. 7278–9–III. Division Three. September 30, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. CHUCK P.
BROOKS, *Appellant*.

*David W. Kraft,* for appellant (appointed counsel for appeal).

*Richard W. Miller, Prosecuting Attorney,* for respondent.

GREEN, C.J.—Chuck P. Brooks appeals his conviction for indecent liberties following a bench trial. The issue involves

the element of "sexual contact." We affirm.

For purposes of this opinion, the facts can be summarized as follows: On December 18, 1984, Rhonda K. Hilborn and her 2–month–old daughter, Tanja, were living in Othello, Washington. At 6:30 p.m., Rhonda left with a friend, Harold Paul, to make a telephone call at a pay phone three blocks away.

Rhonda left Tanja in the care of Chuck Brooks. Before leaving, Rhonda placed Tanja in a beanbag chair. Tanja was wearing a shirt, diaper with rubber pants, booties, and was covered with a blanket. No one else was at the residence. The telephone call took Rhonda away from the residence for approximately 15 minutes.

When Rhonda returned, she did not see Mr. Brooks in the living room. As she approached the bathroom, Mr. Brooks slammed the door. When she asked him what he had been doing, he told her he was taking a shower. Rhonda and Harold Paul both noticed that Mr. Brooks' hair and body were dry. The bathtub was not wet and there were no towels available for Mr. Brooks to dry himself.

Rhonda then checked on Tanja. The blanket was gone as were the booties. Rhonda immediately noticed a whitish liquid substance which she thought to be semen on Tanja's face, chest and stomach.

Mr. Brooks was ordered to leave. At approximately midnight, Rhonda took Tanja to the police station to file a complaint. Officer White, using cotton swabs, removed samples of the substance in question from Tanja's face only.[1] Physical evidence was turned over to the police, including the booties (discovered in the crib and on the bathroom floor), rubber pants, and shirt. A day later, Mr. Brooks' undershorts were obtained as well for testing.

A criminologist determined there was semen present on the undershorts, one of the booties, and the swab. He also determined the presence of soluble blood group A in the stains on the rubber pants, on Tanja's shirt, the swab, the

---

[1]The chest and stomach area had been washed off in the interim at home.

booties and Mr. Brooks' undershorts. The expert's conclusion was that the stain in Mr. Brooks' undershorts and all the stains found on Tanja's clothing could have come from the same source. His testimony further revealed his finding that the semen stain was from a blood group A secretor excluded over 70 percent of the population.

On the basis of this evidence, Mr. Brooks was convicted of indecent liberties. He appeals, contending the evidence is insufficient to sustain the conviction. We disagree.

The focus of Mr. Brooks' argument appears to be the definition of "sexual contact", a necessary element of proof in an indecent liberties charge. Mr. Brooks contends that because sexual contact is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party", RCW 9A.44.100(2)(a), and because there was no direct evidence of such sexual contact presented by the State to the trial court, that ipso facto requires a dismissal.

 Mr. Brooks misconstrues the weight and evidentiary value accorded circumstantial evidence in the State of Washington. Circumstantial evidence "'may be just as telling and compelling' as direct evidence", *State v. Nesteby,* 17 Wn. App. 18, 23, 560 P.2d 364 (1977) (quoting *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976)), and may sustain a guilty verdict if the circumstantial evidence is sufficient. *State v. Green,* 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980).

The focus, then, is whether the circumstantial evidence presented in this case is sufficient to satisfy all the elements of indecent liberties, particularly the element of sexual contact.[2] We find that it is.

Mr. Brooks was alone with the infant for a short period of time. The semen was discovered almost immediately and Mr. Brooks' explanation of taking a shower was obviously

---

[2] We note from the record that the trial court was particularly concerned and obviously agonized over the definition of sexual contact as it applied to the unique facts of this case. Only after an insightful colloquy between the bench and the attorneys was the guilty decision entered.

not credible. The "whitish liquid" was discovered on the infant's chest, stomach, face, rubber pants and booties. Circumstantially, this is sufficient contact with the intimate parts of the infant for gratifying Mr. Brooks' sexual desire. *See In re Adams*, 24 Wn. App. 517, 601 P.2d 995 (1979), and cases cited therein. If the semen were not found on the child, then the decision could probably not be sustained but that is simply not the situation here. The statute does not require direct proof of direct contact between Mr. Brooks' sexual organs with the intimate parts of the infant.

The Superior Court is affirmed.

MUNSON and MCINTURFF, JJ., concur.