116 P.3d 400 (2005)
STATE of Washington, Respondent, Cross-Appellant,
v.
Bud Ray BROWN, Appellant.
No. 22705-7-III.
Court of Appeals of Washington, Division Three, Panel One.
May 31, 2005.
Publication Ordered July 21, 2005.
*401 Thomas M. Kummerow, Washington Appellate Project, Seattle, WA, for Appellant.
Kevin M. Korsmo, Attorney at Law, Spokane, WA, for Respondent.
BROWN, J.
¶ 1 Bud Ray Brown was convicted of second degree robbery. On appeal, Mr. Brown contends: (1) the evidence was insufficient to convict him of second degree robbery; and (2) his sentence violates the Sixth Amendment under Blakely v. State, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The State cross-appeals, contending the court erred in declining to treat three felony convictions in Florida as adult convictions in Mr. Brown's offender score. We affirm Mr. Brown's conviction, but grant the State's cross-appeal and remand for further sentencing proceedings.

FACTS
¶ 2 On April 19, 2003, Geneva Campbell was waiting for a bus in front of a Denny's restaurant in north Spokane, when a young man approached her from behind and demanded her purse. The man took Ms. Campbell's purse and knocked her down. Following the incident, she described the man as a white male, with short blonde hair, wearing dark clothing.
¶ 3 Karen Howell and her husband witnessed the incident from the Denny's parking lot. Ms. Howell described the assailant as a young, Caucasian male, approximately five-feet-seven to five-feet-eight inches tall, with a shaved head, and wearing dark clothing.
¶ 4 Geoffrey Smith was driving a car at a nearby auto dealership where he worked when he saw a young man carrying a purse running at full speed behind Denny's and then "dive" into a waiting car being driven by a female. Report of Proceedings (RP) at 39. He saw the man from the front and back side for a total of about 30 seconds from 30 to 40 feet away. Mr. Smith wrote down the license plate number on his hand. He described the suspect as a Caucasian male, in his 20s, with short blonde hair; approximately five-feet-six inches to five-feet-eight inches tall, wearing a gray sweater and denim jeans. Mr. Smith identified Mr. Brown in a show up and in court as the person he had seen running.
¶ 5 Spokane Police Officer Alan Edwards soon found a car with a matching license plate parked behind an apartment building, about one mile southwest of the crime scene. An individual closely matching the suspect's description then emerged from an area near the car. The suspect was apprehended by Officer Edwards after first running and appearing to hide. The suspect wore a light blue jersey and brown pants when he was arrested.
¶ 6 Officer Paul Watson brought Ms. Campbell and Mr. Smith to that location for identification. From 30 feet away, Ms. Campbell was unable to identify Mr. Brown. She did not want to come any closer. She described Mr. Brown's hair as "too dark." RP at 27. Mr. Smith then positively identified Mr. Brown, but he was unable to pick Mr. Brown out of a defense photomontage seven months later.
¶ 7 Mr. Brown was charged with second degree robbery. At a bench trial, Mr. Brown denied any involvement in the robbery. He testified he was in the area where the car was found because he was visiting a friend named "Hollywood," who lived in a nearby apartment. RP at 92. He related he ran from the police because he feared he would be arrested on an outstanding warrant.
¶ 8 Mr. Brown was convicted as charged. At sentencing, the State argued Mr. Brown's offender score should include three felony convictions in Florida. Mr. Brown committed *402 all three offenses as a juvenile, but was convicted in adult court after he turned 18. Over the State's objection, the court declined to treat the Florida crimes as adult convictions for purposes of Mr. Brown's offender score.
¶ 9 Mr. Brown was sentenced within the standard range for an offender score of five instead of seven as argued by the State. He appealed his conviction and sentence, and the State cross-appealed the court's offender score determination.

ANALYSIS

A. Evidence Sufficiency
¶ 10 The issue is whether sufficient evidence exists to support Mr. Brown's conviction for second degree robbery.
¶ 11 The test for sufficiency of the evidence is whether, after viewing the evidence and all reasonable inferences most favorably to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). We defer to the trier of fact to weigh the evidence and judge the credibility of the witnesses. State v. Bryant, 89 Wash. App. 857, 869, 950 P.2d 1004 (1998) (citing State v. Hayes, 81 Wash.App. 425, 430, 914 P.2d 788 (1996)). Direct and circumstantial evidence are equally relevant. State v. Brooks, 45 Wash.App. 824, 826, 727 P.2d 988 (1986).
¶ 12 To convict Mr. Brown of second degree robbery, the State was required to prove he unlawfully took Ms. Campbell's purse by the use of force. See RCW 9A.56.190; RCW 9A.56.210. Although Mr. Brown contends Mr. Smith's show up identification was impermissibly suggestive and, thus, insufficient to support his conviction, he failed to object at trial. Failure to object to evidence at trial precludes appellate review, unless the appellant makes a showing of manifest constitutional error not present here. See RAP 2.5(a).
¶ 13 Even so, an impermissibly suggestive lineup violates due process solely when it creates an "irreparable probability of misidentification." State v. Ramires, 109 Wash.App. 749, 761, 37 P.3d 343 (2002) (citing State v. Vickers, 107 Wash.App. 960, 967, 29 P.3d 752 (2001), aff'd, 148 Wash.2d 91, 59 P.3d 58 (2002)). Review involves two steps. Id. "First, the defendant must show the lineup was impermissibly suggestive. If the defendant fails to meet this initial burden, then the court determines whether the . . . identification contained sufficient indicia of reliability despite the suggestiveness." Id. (citations omitted).
¶ 14 Generally, "courts have found lineups or montages to be impermissibly suggestive solely when the defendant is the only possible choice given the witness's earlier description." Ramires, 109 Wash.App. at 761, 37 P.3d 343. Only the show up identification merits mention because the montage was prepared by Mr. Brown and was, nevertheless, inconclusive.
¶ 15 Even an impermissibly suggestive identification may be overcome if it is otherwise sufficiently reliable. Ramires, 109 Wash.App. at 761, 37 P.3d 343.
In considering the reliability of the identification, the court may consider: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.
Id. at 762, 37 P.3d 343 (citing State v. Linares, 98 Wash.App. 397, 401, 989 P.2d 591 (1999)).
¶ 16 Here, Mr. Smith initially saw the suspect from about 30 or 40 feet away and observed him for 30 seconds. Mr. Smith's description was accurate as to height, weight, hair color and length. At the time of identification, Mr. Smith was confident Mr. Brown was the suspect he had seen earlier. Finally, the identification took place less than an hour after Mr. Smith first witnessed the suspect. Considering all, Mr. Smith's identification was sufficiently reliable.
¶ 17 Other evidence, some circumstantial, like Mr. Brown's flight and his proximity to the identified get-a-way car, supports conviction. Although Mr. Brown *403 denied involvement and argued weaknesses in the State's case, the credibility and weight decisions are left for the fact finder. See Bryant, 89 Wash.App. at 869, 950 P.2d 1004. In sum, the evidence was sufficient.

B. Offender Score
¶ 18 The issue is whether Mr. Brown's offender score determination violates the Sixth Amendment under Blakely v. State, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), because it was not determined by a jury.
¶ 19 A jury must determine beyond a reasonable doubt the existence of aggravating factors used to increase a sentence above the presumptive maximum set by the legislature. Id. at 2536 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The Court defined "statutory maximum" as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 124 S.Ct. at 2537 (emphasis in original).
¶ 20 Mr. Brown contends the court's finding he was on probation, increasing his offender score, violates Blakely principles. Considering the timing of the Blakely decision relative to the briefing schedule in this case, we cannot say the issue was waived by not having been raised earlier. See State v. Harris, 123 Wash.App. 906, 909, 99 P.3d 902 (2004) (declining to find waiver in similar circumstances).
¶ 21 In any case, Blakely principles are not implicated here. That holding does not purport to impact Washington's offender scoring system. Judicial fact-finding is permitted when establishing recommended standard range sentences. See RCW 9.94A.525; see also RCW 9.94A.530 (the offender score and offender seriousness level determine the standard sentencing range). We decline to follow the reasoning of Division One of this court in State v. Jones, 126 Wash.App. 136, 107 P.3d 755 (2005) (finding the fact of community placement must be found by a jury under Blakely). The Blakely Court specifically noted its decision did not implicate earlier decisions upholding judicial fact-finding to establish mandatory sentences. See Blakely, 124 S.Ct. at 2538 (citing McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)).
¶ 22 Moreover, because the fact of community placement arises out of a prior conviction, constitutional considerations under Blakely do not require that matter to be found by a jury beyond a reasonable doubt. See Blakely, 124 S.Ct. at 2536.
¶ 23 In sum, we conclude Blakely principles were not offended by the sentencing court's consideration of Mr. Brown's supervision status.

C. Cross-Appeal
¶ 24 The issue is whether the trial court erred in declining to treat Mr. Brown's three felony convictions in Florida as adult convictions for purposes of Mr. Brown's offender score calculation.
¶ 25 In determining an offender score, the trial court determines whether prior convictions exist by a preponderance of the evidence and then establishes the offender score as a matter of law. State v. McCorkle, 88 Wash.App. 485, 492-93, 945 P.2d 736 (1997), aff'd, 137 Wash.2d 490, 973 P.2d 461 (1999). We review the court's factual findings for an abuse of discretion and the calculation of the offender score de novo. Id. at 493, 973 P.2d 461.
¶ 26 Under the Sentencing Reform Act of 1981(SRA), foreign convictions are classified according to "comparable offense definitions and sentences provided by Washington Law." RCW 9.94A.525(3). If the elements of the foreign conviction are comparable to the elements of a Washington statute in effect when the crime was committed, the prior conviction is included in the offender score. State v. Mutch, 87 Wash.App. 433, 436-37, 942 P.2d 1018 (1997). This analysis does not include a comparison of criminal procedure. State v. Morley, 134 Wash.2d 588, 596, 952 P.2d 167 (1998) ("Nothing in the SRA states or implies that a sentencing court must conduct the tedious task of comparing out-of-state criminal procedures to in-state procedures.").
*404 ¶ 27 Here, Mr. Brown was charged with three felonies in Florida occurring while he was a juvenile, but he was convicted on these felonies in adult court after he turned 18. The court declined to treat the three Florida felony convictions as adult felony convictions because the procedural history was unclear.
¶ 28 "If we required out-of-state convictions to conform to Washington procedures before allowing those convictions to be counted under the SRA, every single out-of-state conviction would be excluded from consideration." Morley, 134 Wash.2d at 597, 952 P.2d 167. This is contrary to the purposes of the SRA, which was designed, in part, to "ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history." Id. at 602, 952 P.2d 167 (quoting RCW 9.94A.010(1)) (emphasis in original).
¶ 29 More specifically, "[t]he purpose of the offender score statute `is to ensure that defendants with equivalent prior convictions are treated the same way, regardless of whether their prior convictions were incurred in Washington or elsewhere.'" Id. (quoting State v. Villegas, 72 Wash.App. 34, 38-39, 863 P.2d 560 (1993)). Accordingly, we remand for the trial court to compare the elements of the crimes under RCW 9.94A.525(3), without consideration of procedure.
¶ 30 Contrary to Mr. Brown's contention, Blakely does not require a jury finding of a defendant's criminal history. See Blakely, 124 S.Ct. at 2536 ("Other than the fact of a prior conviction . . ."); see also State v. Van Buren, 123 Wash.App. 634, 645, 98 P.3d 1235 (2004) ("A defendant's criminal history, the record of his criminal felony and misdemeanor convictions, need not be proved to a jury by a reasonable doubt before it can be taken into consideration by the sentencing judge.").
¶ 31 Conviction affirmed, and remanded for further proceedings consistent with this opinion.
WE CONCUR: KATO, C.J., and SWEENEY, J.