IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31154-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID BRUCE GUNKEL-RUST, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. —

*Will the real Kali May Bleichner please stand up?* *To Tell the Truth*, television program, modified.

This appeal asks us to address the quantum of evidence needed to prove that the victim of an assault is the same person protected by a no-contact order. David Bruce Gunkel-Rust assaulted a Kali Bleichner and a protective order also shielded a Kali Bleichner. No Kali Bleichner testified at trial. We hold that sufficient circumstantial evidence presented by the State warranted a finding that the two Kali Bleichners were the

same person and merited a conviction for violation of the protective order. Thus, we affirm Gunkel-Rust's conviction. We remand for resentencing, nonetheless.

## FACTS

On July 11, 2012, friends Jordan Brosius and Kali Bleichner joined each other in Kennewick's Keewaydin Park. Brosius had first met Bleichner four years earlier through Bleichner's ex-boyfriend, defendant David Gunkel-Rust. A court order prohibited Gunkel-Rust from contact with Kali May Bleichner.

As Jordan Brosius and Kali Bleichner walked through Keewaydin Park to a gas station, David Gunkel-Rust appeared and approached Bleichner. Gunkel-Rust called Bleichner a slut, asked with whose baby she was pregnant, and followed her as Bleichner attempted to flee his presence. Gunkel-Rust backed Bleichner against a bathroom wall and balled his fists. A worried Jordan Brosius called 9-1-1.

Kennewick Police Officer Elizabeth Grant responded to Jordan Brosius' emergency call. Officer Grant saw David Gunkel-Rust walk from the park bathrooms, peer at her, and join ten to fifteen other people on a large park bench. Grant called: "Hey, Bruce, come over here," and Gunkel-Rust complied. Verbatim Report of Proceedings (VRP) (Sept. 20, 2012) at 44. Gunkel-Rust gave Grant his driver's license, and Grant confirmed his identity. Officer Grant photographed Gunkel-Rust's right hand, which showed a bleeding cut. Grant spoke with Kali Bleichner and observed that her right upper lip was swollen and freshly bruised.

2

## PROCEDURE

The State of Washington charged David Bruce Gunkel-Rust with felony violation of a postconviction protection order. The State alleged that Gunkel-Rust thrice previously violated court protection orders or, in violating the protection order on July 11, he assaulted Kali Bleichner. The State also sought a domestic violence enhancement on the charge.

At the beginning of trial, David Gunkel-Rust personally addressed the court:

THE COURT: Ok. We've entered the plea to the Second Amended Information. Are we ready for the jury?

MR. ZEIGLER [Defense counsel]: No, Judge. The defendant wants to address the Court.

MR. GUNKEL-RUST: I would like to get the rest of my discovery.

THE COURT: That's it?

MR. GUNKEL-RUST: Um, and I would like to know when and if I'm supposed to have my Miranda rights read to me when I get arrested.

THE COURT: Well, I'm not in a position to answer that. That's a question for your attorney. You should ask him, and he's probably capable of telling you the answer to that.

And with regard to the discovery, we're here on the eve of trial. I just think that's an untimely motion. So.

MR. ZEIGLER: Judge, to address that issue, we had previously obtained the permission from the state. I provided him a copy of what I had in the file, police reports. Mr. Gunkel-Rust has a fundamental misunderstanding of the obligations of the state and the Court in regard to discovery. He's seen everything that I've got. In our last conversation he indicated to me that he thought it was my responsibility to find all of the people who were in the park at the alleged time, none of whom were in the police reports, but he said that he thought it was up to me to find them and get statements, and I told them it's not incumbent on defense counsel to do something like that, but he didn't understand that. I'm satisfied with the discovery. He basically hung up, terminated the conversation. I provided everything in discovery pursuant to the Court's order, and I gave him what

3

I had. I indicated to him that I interviewed the state's primary witness.
I also reported to him on the results of that interview, and that's basically where we sit this morning. So I'm prepared for trial. I'm satisfied with the aggravators being off at this point in time. We've accomplished what we really needed to accomplish, and we're prepared to proceed.

Transcript (TR) (Sept. 17, 2012) at 6-7.

During trial, Jordan Brosius and Officer Elizabeth Grant testified. Kali Bleichner did not. Brosius testified that she believed Bleichner was, at the time of trial, either seventeen or eighteen years old. The trial court admitted as exhibits a postconviction no-contact order protecting Kali May Bleichner, judgments and sentences for Gunkel-Rust's four earlier no-contact order violations, five booking photos of Gunkel-Rust, and a photo of Gunkel-Rust's bleeding hand.

During deliberations, the jury asked how old Bleichner was on the date of the incident. The trial court responded, "You have heard all of the evidence." Clerk's Papers (CP) at 57.

The jury found David Bruce Gunkel-Rust guilty of felony violation of a court order. The jury also found by special verdict that Gunkel-Rust's conduct in violating the order constituted an assault and that Gunkel-Rust had previously been convicted at least twice for violating the provisions of a court order. The jury was not unanimous in finding that Gunkel-Rust and Kali Bleichner were members of the same family or household and thus did not enter a verdict for a domestic violence enhancement.

4

In compliance with the jury verdict, the trial court convicted David Bruce Gunkel-Rust. In its findings, the judgment and sentence provided:

> If the crime [charged] is a drug offense, the type of drug involved is:
> [X] as charged in the Amended Information.

CP at 61. The trial court made no finding regarding Gunkel-Rust's present or future ability to pay legal financial obligations. Nevertheless, the court ordered Gunkel-Rust to pay $2,420 in financial obligations and to begin immediately making payments of $50 per month. Discretionary legal financial obligations comprised $1,220 of the total amount of the financial obligations. Gunkel-Rust registered no objection during sentencing to the financial obligations. The trial court sentenced Gunkel-Rust to thirteen months' confinement, and also ruled

> (A) The defendant shall be on community placement or community custody for the longer of:
> (1) the period of early release. RCW 9.94A.728(1)(2); or
> (2) the period imposed by the court, as follows:
> Count 1 for 12 months.

CP at 66.

## LAW AND ANALYSIS

David Gunkel-Rust raises four contentions on appeal: (1) insufficient evidence supports his conviction for a felony violation of a no-contact order, (2) the trial court erred in imposing legal financial obligations without inquiring into his current and future ability to pay, (3) the trial court erred in sentencing him to a variable term of community

5

custody, and (4) the judgment and sentence contains a scrivener's error that should be corrected. We reject Gunkel-Rust's first assignment of error and affirm his conviction. We agree with his remaining assignments of error and remand for resentencing.

*Insufficient Evidence*

The State prosecuted David Bruce Gunkel-Rust, under RCW 26.50.110, for felonious violation of a protection order. The statute reads, in relevant part:

> (1)(a) Whenever an order is granted under . . . chapter . . . 10.99 . . . and the respondent or person to be restrained knows of the order, a violation of any of the following provisions of the order is a gross misdemeanor, except as provided in subsections (4) and (5) of this section:
> . . . .
> (4) Any assault that is a violation of an order issued under . . . chapter . . . 10.99 . . . and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, and any conduct in violation of such an order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.
> (5) A violation of a court order issued under . . . chapter . . . 10.99 . . . is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under . . . chapter . . . 10.99. . . . The previous convictions may involve the same victim or other victims specifically protected by the orders the offender violated.

Violations of protection orders under subsections other than subsections (4) and (5) of RCW 26.50.110 constitute gross misdemeanors.

To convict David Bruce Gunkel-Rust for a felony under RCW 26.50.110, the State needed to submit sufficient evidence for the jury to find the following elements beyond a reasonable doubt: (1) a valid no-contact order existed at the time of the confrontation in

the park, (2) Gunkel-Rust knew the no-contact order existed, (3) the protective order safeguarded the Kali Bleichner who Gunkel-Rust confronted, (4) Gunkel-Rust knowingly violated the order, (5) the violation constituted an assault of Bleichner or Gunkel-Rust had twice been previously convicted for violating a court order protecting anyone, and (6) the violation occurred in the State of Washington. Gunkel-Rust only challenges the sufficiency of the evidence to establish that the Kali Bleichner he confronted was the Kali May Bleichner named in the protection order. He posits that another Kali Bleichner might be the person protected under the no-contact order. He emphasizes that no one testified to the middle name of the Kali Bleichner he confronted at the park.

The State responds that the evidence sufficed for the jury to infer Kali Bleichner's identity beyond a reasonable doubt. The State also expresses concern that requiring the State to provide direct evidence of the identity of the person safeguarded by a protective order would impede its ability to prosecute domestic violence, because many victims avoid testifying out of fear of their abusers.

Due process requires the State to prove, beyond a reasonable doubt, every element of the crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Evidence is sufficient if, after viewing it in the light most favorable to the State, a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980); *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). A reasonable doubt is a doubt for which a reason

7

based on the evidence exists. *State v. Tanzymore*, 54 Wn.2d 290, 291 n.2, 340 P.2d 178 (1959). A defendant challenging the sufficiency of the evidence at trial admits the truth of the State's evidence and all reasonable inferences therefrom. *Witherspoon*, 180 Wn.2d at 883.

David Gunkel-Rust suggests that direct evidence must prove the identity of a domestic violence victim. The general rule, contrary to Gunkel-Rust's argument, is that indirect evidence may support the jury's verdict. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). A jury may draw inferences from evidence so long as those inferences are rationally related to the proven facts. *State v. Jackson*, 112 Wn.2d 867, 875, 774 P.2d 1211 (1989). The jury may infer from one fact the existence of another essential to guilt, if reason and experience support the inference. *Tot v. United States*, 319 U.S. 463, 467, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943).

David Gunkel-Rust relies principally on *State v. Huber*, 129 Wn. App. 499, 119 P.3d 388 (2005). The State charged Wayne Alan Huber with violating a protection order and tampering with a witness. After Huber failed to appear at a preliminary hearing, the State additionally charged Huber with bail jumping. At trial, the State's evidence consisted solely of copies of the information for Huber's original charges, the court order requiring Huber to appear, clerk's minutes indicating Huber had failed to appear, and the bench warrant. The State did not call any witness to identify the Wayne Huber present at trial as the Wayne Huber who violated the order to appear. Huber moved to dismiss at

the close of evidence, which motion the trial court denied. On appeal, this court reversed and held that identity of names alone was insufficient to prove a defendant's identity beyond a reasonable doubt.

This court wrote in *State v. Huber*:

> To sustain this burden when criminal liability depends on the accused's being the person to whom a document pertains—as, for example, in most if not all prosecutions for first degree escape, being a felon in possession of an item that a felon may not lawfully have, lying under oath on a written application, and being an habitual criminal—the State must do more than authenticate and admit the document; it also must show beyond a reasonable doubt "that the person named therein is the same person on trial." Because "in many instances men bear identical names," the State cannot do this by showing identity of names alone. Rather, it must show, "by evidence independent of the record," that the person named therein is the defendant in the present action.
> The State can meet this burden in a variety of specific ways. Depending on the circumstances, these may include otherwise-admissible booking photographs, booking fingerprints, eyewitness identification, or, arguably, distinctive personal information. But the State does not meet its burden merely because the defense opts not to present evidence; if the State presents insufficient evidence, the defendant's election not to rebut it does not suddenly cause it to become sufficient.

129 Wn. App. at 502-03 (footnotes omitted).

In *State v. Huber*, the State presented no evidence to relate the defendant on trial to the person named in the order to appear. Thus, *Huber* does not stand for the proposition that indirect evidence is always insufficient to establish the identity of a person named in a document. Another Washington decision holds that the identity of a defendant may be established by indirect evidence. In *State v. Hill*, 83 Wn.2d 558, 560,

9

520 P.2d 618 (1974), our state high court ruled that identity involves a question or fact for the jury and any relevant fact, either direct or circumstantial, which would convince or tend to convince a person of ordinary judgment, in carrying on his everyday affairs, of the identity of a person should be received and evaluated.

We juxtapose *State v. Huber* with *State v. Hill*, 83 Wn.2d 558 (1974). Our Supreme Court reversed Jimmy Hill's conviction for possession of narcotics on other grounds, but held that the State presented sufficient evidence to identify Hill as the one who committed the offense. Hill's presence in the courtroom during trial, references during testimony to "the defendant" and "Jimmy Hill," and a jury verdict form containing Hill's full name were adequate to establish Hill's identity. The state high court did not find the omission of an in-court identification of Hill fatal to the State's conviction.

*State v. Huber* involved the identity of the accused not the identity of one shielded under a protective order. One might ask if looser standards apply to identifying a victim or a person other than the accused. We need not resolve this question because distinctive personal information confirmed that the Kali Bleichner Gunkel-Rust confronted at the park was the Kali May Bleichner named in the protective order.

Kali Bleichner is an uncommon name. Only one Kali Bleichner may reside in Kennewick and its environs. Therefore, one might conclude that the victim of David Bruce Gunkel-Rust's park assault must have been the subject of the no-contact order imposed on Gunkel-Rust. In turn, one might argue that no further evidence was needed

10

to identify the woman Gunkel-Rust mugged at Keewaydin Park. We conclude that a rare appellation may be evidence to include in a calculation to determine the sufficiency of evidence, but *State v. Huber* requires more. The State during trial presented such additional evidence.

Viewing the evidence in the light most favorable to the State, the jury could have reasonably inferred that the Kali Bleichner, about whom Jordan Brosius and Officer Elizabeth Grant testified, was the Kali May Bleichner named as the protected party in the no-contact order that David Gunkel-Rust violated. Witness Brosius met the Kali Bleichner present in Keewaydin Park through Gunkel-Rust. Gunkel-Rust and the Kali Bleichner named in the order were former boyfriend and girlfriend. Gunkel-Rust called the Kali Bleichner present at the park a slut before accosting her. Gunkel-Rust would unlikely accuse any random Kali Bleichner of being a slut. The Kali Bleichner present at the park attempted to escape the presence of Gunkel-Rust. This conduct confirms a desire and need for no contact with Gunkel-Rust. When Officer Elizabeth Grant arrived, Gunkel-Rust attempted to distance himself from the Kali Bleichner present at the park.

## Legal Financial Obligations

David Gunkel-Rust next contends that the trial court improperly assessed legal financial obligations without considering his financial resources under RCW 10.01.160(3). He does not distinguish, however, between mandatory financial obligations and discretionary financial obligations. The trial court imposed $1,220 in

11

discretionary obligations. Gunkel-Rust did not object to the imposition of any costs at sentencing, but argues that he may still raise the assignment of error for the first time on appeal.

Whenever a person is convicted in superior court, the court may order the payment of legal financial obligations as part of the sentence. RCW 9.94A.760(1). The financial obligations may include certain costs, including expenses incurred by the State in prosecuting the defendant. RCW 10.01.160(1), (2). A $500 victim assessment fee is mandated by RCW 7.68.035, and a $100 deoxyribonucleic acid (DNA) collection fee is mandated by RCW 43.43.754(1). Neither fee is subject to the defendant's ability to pay.

By statute, the court is not authorized to order a defendant to pay discretionary fees unless he or she is or will be able to pay them. RCW 10.01.160(3). In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose. RCW 10.01.160(3); *State v. Kuster*, 175 Wn. App. 420, 424, 306 P.3d 1022 (2013).

Our Supreme Court's recent opinion in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), addressed whether this court should accept review of a challenge to legal financial obligations, when the defendant failed to object below. In *State v. Blazina*, the state high court clarified that RCW 10.01.160(3) requires the trial court "do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry." Rather, the "record must reflect that the trial court made an

12

individualized inquiry into the defendant's current and future ability to pay." *Blazina*, 182 Wn.2d at 838. This inquiry includes evaluating a defendant's financial resources, incarceration, and other debts, including restitution. *Blazina*, 182 Wn.2d at 838-39. The *Blazina* court noted reasons for review of legal financial obligations before collection activities. The high court directed the Court of Appeals to exercise discretion in determining whether to grant review, pursuant to RAP 2.5, of challenges not exercised before the trial court.

The trial court did not make an individualized determination of whether David Gunkel-Rust had or would in the future possess the ability to pay discretionary legal financial obligations. Because of the high amount of discretionary obligations, we exercise our discretion to remand the sentence to the trial court for such an individualized assessment.

*Variable Term of Community Custody*

The trial court imposed community custody for the longer of any term of early release or twelve months. David Gunkel-Rust contends the sentencing court exceeded its statutory authority when it imposed a variable term of community custody. The State maintains that the trial court placed Gunkel-Rust on twelve months of community custody and that the term is not variable. We agree with Gunkel-Rust.

A trial court may only impose sentences that statutes authorize. *State v. Albright*, 144 Wn. App. 566, 568, 183 P.3d 1094 (2008). This court reviews issues of statutory

13

construction de novo as a question of law. *State v. Wilson*, 170 Wn.2d 682, 687, 244 P.3d 950 (2010).

Previously, a court could impose a variable term of community custody under RCW 9.94A.715. But our legislature repealed RCW 9.94A.715 in 2008 in favor of fixed terms of community custody. LAWS OF 2008, ch. 231, § 57; LAWS OF 2009, ch. 28, § 42. Under the amended statute, RCW 9.94A.701(1)-(3), a court may no longer sentence an offender to a variable term of community custody contingent on the amount of earned release, but instead it must determine the precise length of community custody at the time of sentencing. *State v. Franklin*, 172 Wn.2d 831, 836, 263 P.3d 585 (2011). David Gunkel-Rust's contingent sentence, the longer of the period of early release or twelve months, violates the new statute. On remand, the trial court should impose the proper statutory community custody term of twelve months.

### *Scrivener's Error*

David Gunkel-Rust contends that the judgment and sentence entered by the trial court contains a scrivener's error that should be corrected on remand. He underscores the following language as erroneous:

> If the crime [charged] is a drug offense, the type of drug involved is:
> [X] as charged in the Amended Information.

CP at 61. Because the trial court did not convict Gunkel-Rust of a drug offense, he asks that this language be stricken from his judgment and sentence on remand. The State

14

argues that there is no scrivener's error because it filed an amended information in the

case. The State does not explain how this fact obviates Gunkel-Rust's claimed error.

Appellate courts have remanded solely for correction of a scrivener's error in a

judgment and sentence in order to ensure that the document "accurately reflects the

sentence the trial court intended." *State v. Healy*, 157 Wn. App. 502, 516, 237 P.3d 360

(2010). A remand has included the circumstances when a judgment and sentence

misstates the crime of conviction. *State v. Moten*, 95 Wn. App. 927, 929, 976 P.2d 1286

(1999). Particularly since we remand this case on other grounds, we grant David Gunkel-

Rust's request to also remand with instructions to correct the scrivener's error.

*Statement of Additional Grounds for Review*

David Gunkel-Rust also submits a statement of additional grounds for review, in

which he contends that he received ineffective assistance of counsel because his attorney

withheld evidence from him and delivered a weak closing argument that contributed to

his conviction. A criminal defendant can submit a pro se statement of additional grounds

for review "to identify and discuss those matters related to the decision under review *that*

the defendant believes have not been adequately addressed by the brief filed by the

defendant's counsel." RAP 10.10(a). The rule additionally provides in part:

> Reference to the record and citation to authorities are not necessary
> or required, but the appellate court will not consider a defendant's
> statement of additional grounds for review if it does not inform the court of
> the nature and occurrence of alleged errors. Except as required in cases in
> which counsel files a motion to withdraw as set forth in rule 18.3(a)(2), the

appellate court is not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review.

RAP 10.10(c); *see also State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

A claim of ineffective assistance of counsel requires proving that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). This court presumes that counsel was effective. *Strickland v. Washington*, 466 U.S. 668, 689-90, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To rebut the strong presumption that counsel's performance was effective, the defendant bears the burden of establishing the absence of any conceivable legitimate tactic explaining counsel's performance. *State v. Hamilton*, 179 Wn. App. 870, 879-80, 320 P.3d 142 (2014).

David Gunkel-Rust complains that his attorney withheld evidence from him. Nevertheless, defense counsel allowed Gunkel-Rust to view all available discovery. Gunkel-Rust identifies no information withheld from him. Gunkel-Rust also complains that his attorney implicated his guilt during closing argument, but he identifies no remark uttered by his counsel that inculpated him. Thus, we reject Gunkel-Rust's contention of ineffective assistance of counsel.

No. 31154-6-III
*State v. Gunkel-Rust*

CONCLUSION

We affirm David Bruce Gunkel-Rust's conviction for felonious violation of a protective order. We remand for resentencing, however. On remand, the trial court should remove the scrivener's error suggesting that the court convicted Gunkel-Rust of a drug offense, amend the sentence to limit community custody for one year, and conduct an individualized determination of Gunkel-Rust's ability to pay discretionary legal financial obligations.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.