IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32902-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VALENTIN I. MENDOZA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Valentin Mendoza appeals his conviction of one count of child

rape. On appeal, Mendoza challenges the introduction of hearsay statements of the

victim, the sufficiency of the evidence to convict, and the sufficiency of the findings of

fact. We affirm the conviction.

## FACTS

Adalia Gonzalez, born on November 15, 2005 in Sunnyside, is the crime victim.

Her older brother is Marcos Rivera, born August 8, 2001. The children's mother is

Angelica Rivera-Benitez and her maternal grandmother is Delfina Benitez. Adalia's

mother has six younger brothers, including defendant Valentin Mendoza, born May 28,

1998. Thus, Marcos and Adalia have uncles near in age. Adalia Gonzalez and Marcos Rivera are fictitious names.

The residences of Angelica Rivera-Benitez and her children hold relevance. Rivera-Benitez and her children, including Marcos and Adalia, moved to California in January 2006, months after Adalia's birth. In October 2007, the family returned to Washington State and resided with Angelica's mother, Delfina Benitez. The family moved back to California in February 2008.

In February 2009, Angelica Rivera-Benitez and her children moved to Grandview and lived with Angelica's cousin. In May 2009, they moved into an apartment on Cemetery Road in Sunnyside. Defendant Valentin Mendoza lived with Rivera-Benitez, Adalia, and Marcos for two months during the fall of 2012.

In November 2012, Marcos Rivera told his mother, Angelica Rivera-Benitez, of Valentin Mendoza harming Adalia. Adalia was then six or seven years of age. Adalia cried while Marcos told his mother, and, when Rivera-Benitez asked Adalia if Marcos' comments were accurate, Adalia responded affirmatively. Rivera-Benitez accompanied Adalia to a physician and told the doctor that she believed Adalia had been molested.

In February 2013, Amy Gallardo, Yakima County Prosecuting Attorney's Office investigator, conducted a child forensic interview of Adalia. During the interview, Adalia told Gallardo that Valentin Mendoza made her lick "his thing." 2 Tr. of Proceedings (TP) at 229. According to Adalia, at least one of these occurrences

2

happened after the family returned from California, when she was four years of age, and when she stayed with her grandmother. She affirmed later that the first time that Valentin Mendoza made her lick his privates was at her grandmother's home. Adalia reported that she told Valentin Mendoza "no," and he responded that he would inform Adalia's mother that Adalia "made me do it." 2 TP at 230. Adalia did not report Mendoza to her mother, because Adalia thought her mother only believed older children told the truth.

Adalia Gonzalez also reported to Amy Gallardo during the interview that, after or during one occurrence, she was in her big brother's room, and that other occurrences happened when the family got an apartment. The last time she licked Valentin Mendoza's "thingy" was on her brother's bed. 2 TP at 232. Adalia also reported that Mendoza's conduct "finished" when, in January, she told her mother and the mother spoke to a doctor. 2 TP at 230.

When describing the particulars of the occurrences to Amy Gallardo, Adalia Gonzalez told Gallardo that "[h]e [Mendoza] took down his pants a little bit." 2 TP at 239. She explained his "thing" tasted nasty, it tasted like "chocolate milk mixed with cow poo," it smelled like "dogs when they're dirty," and looked like something big and hairy, "like a grizzly bear." 2 TP at 244. She compared it to milking a cow. Adalia drew a picture of Mendoza's "thing" and told Gallardo that "a little bit of slobber" or "a little bit of wet stuff" came out of his private. 2 TP at 245-47. Adalia said she stopped doing "it" because she did not like "it," and he would "put it away." 2 TP at 245-47.

PROCEDURE

The State of Washington charged Valentin Mendoza, in juvenile court, with two counts of child rape and two counts of child molestation, with each count alleged to have occurred between October 1 and November 12, 2012. The information did not identify the specific date of any encounter. The State later amended the information to allege that all four crimes occurred between January 1, 2010 and November 12, 2012, without specifying discrete dates for any of the four crimes. The information omitted any reference to the place of the crime other than within the State of Washington.

During trial, the State identified count one of rape occurring at Delfina Benitez's home. Benitez is Adalia's grandmother and Valentin Mendoza's mother. Count two allegedly happened at Adalia's home.

At the beginning of trial, the court conducted a hearing on the capacity of Adalia Gonzalez to testify. The trial court ruled that Adalia possessed capacity. The trial court also ruled that she would listen to the interview of Adalia conducted by the prosecuting attorney's investigator. At trial, Adalia was eight years old.

Adalia Gonzalez testified at the trial. She declared her date of birth, identified Valentin Mendoza, and stated they were not married. She testified that Mendoza made her lick his penis when he was at her own house and at her grandmother's house. Although Adalia averred that Mendoza made her lick his penis, she could not provide many details about the encounter. The State showed her a picture she drew during her

4

interview with Amy Gallardo but Adalia did not remember it. Adalia said that Mendoza's penis tasted nasty and felt weird but did not provide more description.

Amy Gallardo testified at trial and the court played the recording of her interview of Adalia. During trial, Angelica River-Benitez testified in response to the State's questioning:

> Q. Okay. In 2010 where did Delfina [Adalia's grandmother] live?
> A. She lived —
> Q. Do you remember?
> A. I don't remember where she lived. It's been a long time.
> Q. Okay.
> A. I—I—I believe she still lived in Granger, I don't know.
> Q. But you did not live with her?
> A. No, we did not live together, no.
> Q. And the kids did not live there with her?
> A. No. But they would go visit. They would spend nights.
> Q. Your mother, Delfina, had both—Valentin, as well as Juan living with her correct?
> A. Yes.

1 TP at 189.

At the close of trial, the trial court, at the concession of the State, dismissed the two counts of child molestation. The trial court adjudged Valentin Mendoza guilty of count one and not guilty of count two of rape. Count one allegedly occurred at Adalia's grandmother's residence. The trial court considered the child hearsay only as to count one.

5

The trial court filed written findings of fact and conclusions of law. Because

Valentin Mendoza assigns error to the sufficiency of the findings, we quote most of the

important findings verbatim. The entire findings of fact are found in an appendix.

. . . [T]he court now enters the following:

## I.    **FINDINGS OF FACT**

. . . .

1.2 During January 1, 2010 and November 12, 2012, [Adalia] would have been between the ages of 4 and 6 years old.

. . . .

1.6 [Adalia] testified that this happened when she was four and had moved back from California. [Adalia] told the Court that this happened at Grandma Delfina's house in Granger, Washington when she lived there.

1.7 [Adalia] also indicated that Respondent Mendoza had made her lick his penis in Grandma's room and that it stopped when Grandma was coming.

. . . .

1.12 [Adalia] testified that she did not recognize the drawing, State's 1, but then stated that she "drew weird when I was little." From her statement, the Court concluded that [Adalia] did recognize the drawing but that she wasn't very happy with it now that she is older. That she did remember drawing a picture for Ms. Gallardo but didn't know what it was.

1.13 [Adalia] testified that she did not know how many times she licked it.

. . . .

1.15 [Adalia] stated the last time it happened was when she was six years old but gave no other details. She stated she remembers, but doesn't know how to explain, just knows.

. . . .

1.22 Angelica Benitez-Rivera provided the Court with a general time frame of events. She testified that [Adalia] was born in Sunnyside, Washington but then moved to California in January of 2006. They returned to Washington State for a while and then later moved back to California in February in 2008. The family moved back from California in February of 2009 and moved in with a cousin. They later moved into an apartment in Sunnyside in May of 2009.

6

1.23 Benitez-Rivera confirmed that Grandma Delfina Benitez lived in Granger during this time and that [Adalia] would frequently stay overnight at her grandmother's. Respondent Mendoza was living with Delfina at this time.

1.24 Angelica Benitez-Rivera explained that Respondent Mendoza would frequently visit her home; and that he lived there during August/September of 2012.

. . . .

1.31 [Adalia] told Ms. Gallardo that the first time it happened was at Grandma Delfina's house in Granger and the last time was at her home in Sunnyside.

. . . .

1.36 [Adalia] drew a picture for Ms. Gallardo (State's 1) demonstrating what happened.

Clerk's Papers (CP) at 144-49. The conclusions of law stated:

2.1 The Court concludes beyond a reasonable doubt that the respondent had sexual intercourse with [Adalia];

2.2 The Court concludes that the sexual intercourse occurred between January 10, 2010 and November 12, 2010;

2.3 The Court concludes that [Adalia] was less than twelve years old at the time of the sexual intercourse;

2.4 The Court concludes that the respondent and [Adalia] were not married or in a State registered domestic partnership at the time of the sexual intercourse;

2.5 The Court concludes that [Adalia] was at least twenty-four months younger than respondent Mendoza; and

2.6 This took place in Yakima County, Washington.

CP at 150.

## LAW AND ANALYSIS

### Confrontation Clause

Valentin Mendoza contends that the trial court violated the constitution's

confrontation clause by admitting into evidence statements by Adalia Gonzalez to the

7

forensic interviewer without an opportunity for him to cross-examine Adalia regarding

those statements. The State responds that Adalia's hearsay statements were admissible

since she testified at trial, at least regarding the one count on which the trial court

convicted Mendoza.

RCW 9A.44.120, the child rape hearsay statute, allows admission of a child's prior

statements, under limited circumstances. The statute declares, in pertinent part:

> A statement made by a child when under the age of ten describing
> any act of sexual contact performed with or on the child by another [or]
> describing any attempted act of sexual contact with or on the child by
> another . . . that results in substantial bodily harm as defined by RCW
> 9A.04.110, not otherwise admissible by statute or court rule, is admissible
> in evidence in . . . criminal proceedings, including juvenile offense
> adjudications, in the courts of the state of Washington if:
> (1) The court finds, in a hearing conducted outside the presence of
> the jury, that the time, content, and circumstances of the statement provide
> sufficient indicia of reliability; and
> (2) The child either:
> (a) Testifies at the proceedings; or
> (b) Is unavailable as a witness: PROVIDED, That when the child is
> unavailable as a witness, such statement may be admitted only if there is
> corroborative evidence of the act.

Despite the applicability of the child hearsay statute, this court must assess the

constitutionality of the use at trial of Adalia's out of court statements.

Under the Sixth Amendment's confrontation clause, "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

against him." U.S. CONST. amend. VI. Under the confrontation clause, testimonial

hearsay is inadmissible unless either (1) the declarant testifies at trial or (2) the declarant

8

is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 61, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Testimonial statements include those made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *State v. Fisher*, 130 Wn. App. 1, 13, 108 P. 3d 1262 (2005). A child's statements in the course of a forensic interview are testimonial. *State v. Beadle*, 173 Wn.2d 97, 110, 265 P.3d 863 (2011).

The right to confrontation is not violated by admitting a declarant's hearsay statements as long as the declarant testifies as a witness and is subject to full and effective cross-examination. *State v. Clark*, 139 Wn.2d 152, 159, 985 P.2d 377 (1999); *State v. Price*, 158 Wn.2d 630, 640, 146 P.3d 1183 (2006). The confrontation clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *State v. Price*, 158 Wn.2d at 642.

*State v. Price*, 158 Wn.2d 630 (2006) controls this appeal. Charles Price molested R.T. at a daycare run by Price's wife. At age six, R.T. reported the abuse to her mother and incriminated Price during a recorded interview at a sexual assault clinic. The State charged Price with first degree child molestation, and the trial court held a pretrial child hearsay hearing regarding R.T.'s statements to her mother and the interviewer. The court found R.T. competent and ruled that the child hearsay exception applied. When the State

9

questioned R.T. about the abuse at trial, she testified that she forgot. R.T.'s mother and the clinic interviewer testified to statements made by the child, and the jury heard the audio recording of the interview. A jury convicted Price of molesting R.T.

On appeal, Charles Price complained that R.T.'s failed memory prevented an opportunity to confront her. Our Supreme Court disagreed and held that R.T.'s out of court statements did not violate the confrontation clause. The court reasoned:

> R.T. was physically present in the courtroom and she confronted
> Price face to face; she was competent to testify and testified under oath; the
> defense retained the full opportunity to cross-examine her and in fact called
> attention to her lack of memory in closing; and the judge, jury, and
> defendant were able to view R.T.'s demeanor and body language while she
> was on the stand such that they could evaluate for themselves whether R.T.
> was being truthful about her lack of memory.

*State v. Price*, 158 Wn.2d at 650.

Under the reasoning of *State v. Price*, the trial court correctly admitted the remarks of Adalia Gonzalez during her interview with Amy Gallardo. During trial, Adalia was physically present in the courtroom and confronted Valentin Mendoza face to face. Even though Adalia's trial testimony did not closely correlate with her remarks during her interview with Gallardo, the State questioned her about her conversation with Gallardo and about the actual abuse. Mendoza had the opportunity to call attention to the differences between her in-court testimony and her out-of-court interview. The trial court viewed Adalia's demeanor and body language while she testified and could evaluate her testimony for veracity.

10

## Sufficiency of Evidence

Valentin Mendoza contends the evidence was insufficient to support his conviction. In particular, Mendoza challenges the trial court's finding of fact 1.23 that, during the time of the crime, grandmother Delfina Benitez lived in Granger, Adalia frequently stayed overnight at the home, and Mendoza lived with Benitez at this time. The State responds that Angelica Rivera-Benitez provided testimony to support the finding and the testimony suffices to support the conviction. We agree with the State.

Evidence is sufficient if a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Both direct and indirect evidence may support the jury's verdict. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). This court draws all reasonable inferences in favor of the State. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). Only the trier of fact weighs the evidence and judges the credibility of witnesses. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

In focusing on finding 1.23, Valentin Mendoza argues that Angelica Rivera-Benitez did not testify that Adalia "frequently" stayed overnight at her grandmother's home. Nevertheless, Angelica Rivera testified that Adalia and her other children spent the night at Benitez's home. The State did not need to prove frequent stays at the grandmother's residence. Valentin Mendoza had ample opportunity to rape Adalia at the grandmother's home.

During trial Adalia Gonzalez testified that, when she was four years old, her uncle Valentin Mendoza first made her "lick his penis" at her grandmother's home. 1 TP at 80. She testified that she was born on November 15, 2005, making her four years old from November 15, 2009 to November 15, 2010. Mendoza was born May 28, 1998, more than 24 months before Adalia was born. Adalia testified that she was not married to Mendoza. On this evidence alone, a rational trier of fact could have found each element of the crime beyond a reasonable doubt.

## Sufficient Findings

Valentin Mendoza contends the trial court failed to enter findings sufficient for appellate review because the trial court did not resolve conflicts in the evidence. We disagree that the findings lack sufficiency. We also disagree that the trial court must resolve conflicts in the evidence through its findings of fact.

Under JuCR 7.11

> **(c) Decision on the Record.** The juvenile shall be found guilty or not guilty. The court shall state its findings of fact and enter its decision on the record. The findings shall include the evidence relied upon by the court in reaching its decision.
> **(d) Written Findings and Conclusions on Appeal.** The court shall enter written findings and conclusions in a case that is appealed. The findings shall state the *ultimate facts* as to each element of the crime and the evidence upon which the court relied in reaching its decision. . . .

(Emphasis added.) Contrary to Valentin Mendoza's contention, the rule states nothing about resolving conflicts in the testimony.

12

JuCR 7.11 requires the court to declare the ultimate facts as to each element of the crime and evidence on which the trial court relies. Ultimate facts are facts necessary to determine issues in the case, as distinguished from evidentiary facts supporting them. Ultimate facts include logical conclusions deduced from primary evidentiary facts. *State v. Alvarez*, 128 Wn.2d 1, 15, n.15, 904 P.2d 754 (1995); *State v. Roggenkamp*, 115 Wn. App. 927, 948-49, 64 P.3d 92 (2003) aff'd, 153 Wn.2d 614, 106 P.3d 196 (2005).

The trial court entered conclusions of law that declared all elements of rape of a child to be established beyond a reasonable doubt. A finding of fact erroneously described as a conclusion of law is reviewed as a finding of fact. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

JuCR 7.11 demands that the court, in its findings, include the evidence relied on by the court in reaching its decision. Valentin Mendoza argues that the trial court failed to provide a sufficient record for appellate review because each finding merely recites the evidence presented by various witnesses without adopting certain facts. We read the findings to the contrary. The opening paragraph and closing paragraph of the findings declare the testimony listed in the exhaustive findings of fact section to be the court's findings. Each of the trial court's findings of fact is a piece of evidence the trial court considered.

Valentin Mendoza may claim the trial court erroneously concluded that Adalia Gonzalez lived with her grandmother during 2010, when the evidence shows Adalia lived

13

No. 32902-0-III
*State v. Mendoza*

with her grandmother only between October 2007 and February 2008. Nevertheless, the trial court made no such finding. The trial court found that Adalia sometimes stayed overnight with her grandmother in 2010, when a rape occurred.

## CONCLUSION

We affirm Valentin Mendoza's conviction for one count of child rape.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

14

APPENDIX

. . . [T]he court now enters the following:

## I.    **FINDINGS OF FACT**

1.1 [Adalia] testified that her birthday was November 15, 2005.

1.2 During January 1, 2010 and November 12, 2012, [Adalia] would have been between the ages of 4 and 6 years old.

1.3 [Adalia] identified the respondent [Valentin Mendoza] as her uncle.

1.4. [Adalia] indicated in her interview with Ms. Gallardo that the respondent was 13 and almost in college.

1.5 [Adalia] told the Court she was not married to the Respondent Mendoza.

1.6 [Adalia] testified that this happened when she was four and had moved back from California. [Adalia] told the Court that this happened at Grandma Delfina's house in Granger, Washington when she lived there.

1.7 [Adalia] also indicated that Respondent Mendoza had made her lick his penis in Grandma's room and that it stopped when Grandma was coming.

1.8 [Adalia] testified that Respondent Mendoza made her do it even though she did not want to do it. Respondent had convinced her that he would tell her mom that it was her idea and [Adalia] was afraid she would be the one to get into trouble.

1.9 [Adalia] testified that she told [Marcos] and J.P.M. in the kitchen at her mom's house but [Adalia] is not sure when this happened.

1.10 [Adalia] testified that [Marcos] told her mom what happened when they were at school and then she told her mom what happened.

1.11 [Adalia] testified that when she licked the respondent's penis it tasted nasty, gross and felt weird.

1.12 [Adalia] testified that she did not recognize the drawing, State's 1, but then stated that she "drew weird when I was little." From her statement, the Court concluded that [Adalia] did recognize the drawing but that she wasn't very happy with it now that she is older. That she did remember drawing a picture for Ms. Gallardo but didn't know what it was.

1.13 [Adalia] testified that she did not know how many times she licked it.

15

1.14 When cross-examined, [Adalia] testified again that "it" was oval, felt gross, nasty and weird.

1.15 [Adalia] stated the last time it happened was when she was six years old but gave no other details. She stated she remembers, but doesn't know how to explain, just knows.

1.16 [Marcos] testified that he was angry with Respondent Mendoza but that his anger was an excuse, that he was really disappointed in himself for not watching over his sister.

1.17 [Marcos] testified that he was mad at the respondent for leaving without an apology.

1.18 [Marcos] recalled a day when [Adalia] was acting differently, that she didn't want to eat or go outside.

1.19 [Marcos] recalled a time when [Adalia] was sitting on the respondent's lap at his home in Sunnyside, not at grandma's house. He thought this was suspicious because [Adalia] did not sit in anyone's lap but her dad's.

1.20 The Court found [Marcos] to be an honest witness because he was very careful to testify to things only he had direct knowledge/evidence of, even when pushed on cross-examination.

1.21 [Marcos] testified that he had confronted Respondent Mendoza twice about his suspicions. The first time he said Respondent Mendoza denied anything had happened between himself and [Adalia]. The second time, he said the respondent said, "I'm not going to lie anymore. I'm moving to my dad's because I can't trust myself anymore."

1.22 Angelica Benitez-Rivera provided the Court with a general time frame of events. She testified that [Adalia] was born in Sunnyside, Washington but then moved to California in January of 2006. They returned to Washington State for a while and then later moved back to California in February in 2008. The family moved back from California in February of 2009 and moved in with a cousin. They later moved into an apartment in Sunnyside in May of 2009.

1.23 Benitez-Rivera confirmed that Grandma Delfina Benitez lived in Granger during this time and that [Adalia] would frequently stay overnight at her grandmother's. Respondent Mendoza was living with Delfina at this time.

1.24 Angelica Benitez-Rivera explained that Respondent Mendoza would frequently visit her home; and that he lived there during August/September of 2012.

16

1.25 Angelic Benitez-Rivera stated that she was at parent/teacher conferences in November of 2012 when she heard [Marcos] and [Adalia] whispering and she asked them what they were talking about. When [Marcos] told his mother what happened, [Adalia] looked scared and started to cry, tears were running down her face. When Angelica Benitez-Rivera asked her if it was true, what [Marcos] had said, [Adalia] had said yes. Angelica Benitez-Rivera stated she gave [Adalia] a shirt to wipe down the car because she was crying so much.

1.26 Angelica Benitez-Rivera called the Grandview Farm Worker's Clinic and made an appointment. During the exam, [Adalia] was scared and sad.

1.27 After the doctor's appointment, Angelic Benitez-Rivera asked [Adalia] questions for about 20 minutes. The clinic had said both CPS and Law Enforcement would be notified. Angelica Benitez-Rivera wanted to be sure, did it happen or was [Adalia] confused. [Adalia] told her mother that respondent Mendoza had made her lick his __ (and then [Adalia] pointed to her groin area). [Adalia] told her mother that Mendoza had rubbed on her, grabbed her and made her suck his wee wee. [Adalia] indicated that there was no vaginal or anal penetration.

1.28 Ms. Gallardo testified that she conducted a child forensic interview with [Adalia] at the courthouse on February 28, 2013.

1.29 [Adalia] told Ms. Gallardo that she was there because of the bad dreams she was having because of what "Isma" did. It was determined that "Isma" is the nickname that [Adalia] called the respondent.

1.30 Ms. Gallardo described [Adalia's] demeanor during that interview as age appropriate. She also indicated that there was a noticeable change in [Adalia] when she was talking about the abuse versus during the rapport building stages. She noted that [Adalia's] voice would get quiet, sometimes cracked and sometimes reverted to baby talk.

1.31 [Adalia] told Ms. Gallardo that the first time it happened was at Grandma Delfina's house in Granger and the last time was at her home in Sunnyside.

1.32 [Adalia] told Ms. Gallardo that she didn't tell because she was afraid mom would "believe big kids over little kids."

1.33 The interview with Ms. Gallardo elicited the following sensory details: (a) That the respondent told [Adalia] to think of her favorite milkshake flavor and lick it; (b) That it tasted like chocolate milk mixed with cow poo; (c) that it smelled like a dog when it was dirty; and (d) felt nasty like milking a cow. (Additionally, the court found that, although

17

there was no evidence in the record that [Adalia] had ever milked a cow, she gave a very convincing demonstration in the video.)

1.34 That when [Adalia] was licking "it" the respondent would say "come on, come on, it's alright." And he would put it away when someone was coming.

1.35 [Adalia] told Ms. Gallardo that it looked like chocolate, was big and hairy like a grizzly bear and that slobber or wet stuff would come out. [Adalia] would stop doing it when that happened, when water was coming from his privates.

1.36 [Adalia] drew a picture for Ms. Gallardo (State's 1) demonstrating what happened.

1.37 [Adalia] said that Respondent Mendoza only touched her and no one else. That [Adalia] felt really sad. That "Isma" was her uncle and she expressed concern that he was going to jail but that she wished it would stop.

1.38 Detective Layman testified that he interviewed the respondent on June 28, 2013 in Ephrata, Washington.

1.39 Present at the interview was respondent, respondent's father, Detective Layman and Detective Prieto.

1.40 Detective Layman described Respondent Mendoza body language during that interview as Mendoza having his arms crossed, laughing at times and using air quotes when using the word "supposedly."

1.41 Respondent Mendoza told Detective Layman that the reason [Adalia] knew about sucking/licking and her details of events came from the fact that her family talked about having babies all the time.

1.42 J.P.M. confirmed that Respondent Mendoza lived with Angelica Benitez-Rivera, [Marcos] and [Adalia] for a period of two months in the fall of 2012.

1.43 The Court finds that "it/that" refers to sexual acts. The Court makes this finding that when each person was testifying, based on the context of the events they were describing and the surrounding circumstances, it was clear to the Court that those pronouns refer to sexual acts.

1.44 That it is not contested that the licking or sucking of Mendoza's "thingy" constitutes sexual intercourse.

1.45 All the above took place in Yakima County Washington.

CP at 144-50.