IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33960-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHNNA D. SMITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — A Spokane County jury convicted Johnna Smith of second

degree robbery of headphones from a pharmacy store. On appeal, Smith assigns error to

evidentiary rulings by the trial court. She also challenges the sufficiency of evidence for

her conviction. We reject her arguments.

## FACTS

On July 30, 2014, Rite Aid Pharmacy asset protection employees Matthew

McDaniels and John Reynolds worked in the evening at a north Spokane pharmacy store.

Around 5:45 p.m., they monitored, from a surveillance room's cameras, high theft areas

inside the store. On one of the cameras, the duo observed a female grab headphones, a

high theft product. After taking the headphones, the lady paced the aisle and then ambled

to coolers in the store, where she selected a bottle of water. Next she walked to the candy

aisle, near the front of the store, where she concealed the headphones in a large bag.

Once Matthew McDaniels espied the lady conceal the headphones, he left the surveillance room and positioned himself near the front door of the store. John Reynolds maintained observation of the woman through the camera system.

The woman paid for the bottled water, but did not pay for the headphones. Once the woman passed through the security system that detects unpaid merchandise, Matthew McDaniels approached the woman, identified himself as a Rite Aid asset protection employee, and asked her for the merchandise for which she may have neglected to pay. The woman lowered her head and tried to exit the door, but McDaniels blocked her egress. The lady then used her hands, pushed McDaniels, and exclaimed: "You can't touch me," "You can't stop me," and "Let me go." Report of Proceedings (RP) at 77. After failing to shake McDaniels, the woman yelled for help, pushed a set of sliding doors off their hinges, and fled outside.

When the woman departed the Rite Aid pharmacy, a male exited an older Honda parked outside the store. The man approached Matthew McDaniels and shouted profanities. McDaniels identified himself, and the man threw two punches at him. The first punch missed, but the second blow struck McDaniels' chest. The male yelled to the lady to enter the car and "go, go, go." RP at 79. The female drove away, and the man escaped on foot. John Reynolds exited the building and pursued the Honda on foot.

2

McDaniels noted the Honda's license plate number and called 911. The woman drove near the fleeing man, and he entered the vehicle.

At 6:43 p.m., on July 30, Officer Michele Kernkamp responded to the Spokane Rite Aid store in response to Matthew McDaniels' emergency call. Officer Kernkamp searched for the name of the owner of the Honda on her patrol car's computer by referencing the Honda license plate number. The search unearthed Corey Knudsvig as registered owner. Kernkamp further searched, through her computer, to determine if Spokane police had earlier contact with Knudsvig. Kernkamp discovered that Officer Craig Hamilton earlier interfaced with Knudsvig. On April 7, 2014, Officer Hamilton stopped a 2003 Chevrolet with four individuals inside. Two of the passengers were Corey Knudsvig and Johnna Smith.

On the evening of July 30, Officer Michelle Kernkamp retrieved a photograph of Johnna Smith, perhaps from the Department of Licensing, from Kernkamp's computer. Kernkamp, while at the Rite Aid Store, compared the photograph of Johnna Smith with the store video. Officer Kernkamp could not discern if the lady in the photograph was the same person shown in the video. Officer Kernkamp journeyed to Corey Knudsvig's residence, but did not find Knudsvig present.

On a later date, Spokane Detective Jerry Hensley met with Matthew McDaniels and John Reynolds at the Rite Aid store. Hensley showed McDaniels a photomontage.

3

McDaniels picked the photo of Johnna Smith from the photomontage, but Reynolds could not identify anyone from the photographs.

Detective Jerry Hensley interacted twice with Johnna Smith in 2011, with each interaction lasting fifteen minutes. Detective Hensley maintained that, through this contact, he became familiar with Smith's facial and body features. While at the Rite Aid store, Hensley watched the surveillance tape. He identified Smith on the video tape because of the two earlier interactions and his creation of the photomontage in the investigation of the Rite Aid theft.

## PROCEDURE

The State of Washington charged Johnna Smith with second degree robbery as a result of the headphones theft at the Rite Aid pharmacy on July 30, 2014.

Johnna Smith moved in limine to exclude evidence of her contact in 2014 with Officer Craig Hamilton while with Corey Knudsvig. During a pretrial hearing, Smith clarified that she also sought exclusion of testimony by Detective Jerry Hensley of his 2011 contacts with Smith and his identification of her from the surveillance video. The State told the trial court that Detective Hensley's 2011 interaction with Smith was during Smith's role as a confidential informant, but the State agreed not to mention the reason for Hensley's earlier contact. The trial court ruled:

> As far as the testimony of Detective Hensley is concerned, it looks like he was the one [who was] responsible were [sic] putting together the photo montage that a witness used to identify Ms. Smith. It also appears

4

that he has had some contact with her in the past. Maybe she was working as an informant or something of that nature. The argument is that the prejudice of that relationship outweighs the probative value.

Here, identity is an issue. It looks like he reviewed the video, possibly used that to put together the photo montage after he realized who he thought the person in that video depicted. It is prejudicial, but the relevance outweighs the probative—or, the prejudicial value because otherwise any person who might have had contact with law enforcement in the past would be immune from having that person testify.

RP at 32-33. The trial court denied Smith's motion in limine.

During trial, Matthew McDaniels identified the woman who committed the robbery as the woman sitting at defense counsel's table, Johnna Smith. McDaniels stated he came within inches of Smith during their tussle at the Rite Aid store.

Matthew McDaniels, during testimony, could not recall on which day of the week the theft occurred, the temperature that day, what he ate for lunch that day, or what type of shoes the female robber wore. McDaniels also testified as follows:

> Q (By Mr. Ames [Defense counsel]) Are you testifying to this jury that you could not be mistaken about your selection?
> A I testified that I could be mistaken about some things but the fact that I am testifying that that is Ms. Smith that I encountered that day, I'm 100 percent.
> Q So you're a hundred percent absolutely positive that it was Ms. Smith?
> A Correct.

RP at 115.

During cross-examination of Matthew McDaniels by Johnna Smith's counsel, McDaniels agreed that the woman in the Rite Aid store surveillance video bore a marking

5

No. 33960-2-III
*State v. Smith*

on the back of her neck. Defense counsel then attempted to establish that Smith lacked

this marking at least at the time of trial. The following colloquy occurred:

Q (By Mr. Ames [Defense counsel]) Now, what if I told you that
my client, Ms. Smith, has no similar mark on the back of her neck?
MR. NAGY [State's counsel]: Objection, Your Honor.
THE COURT: Sustained. Facts not in evidence.
MR. AMES: Your Honor, I'd like my client to be able to approach
the witness and show him the back of her neck.
MR. NAGY: Objection, Your Honor. Relevance. It's a year and a
half after the fact.
THE COURT: Overruled.
MR. AMES: That means you can.
THE DEFENDANT: Oh.
MR. AMES: I'd like to approach, Your Honor.
THE COURT: Yes. You can go ahead and have a seat.
MR. AMES: No. I'd like her to stay for a minute, if I could.
THE COURT: Go ahead.
Q (By Mr. Ames) I'm going to show you what's been marked
defense Exhibit 103. I know you haven't seen that before.
MR. AMES: Go ahead and hold your hair up.
Q (By Mr. Ames) But do you recognize it?
A Yes. It could be the same person.
Q Doesn't it appear to be a picture of Ms. Smith?
MR. AMES: Let him look at your head. Go ahead and look this
way.
A. It could be, yes.

RP at 109-10. We are not convinced this record shows Smith lacked a mark on the day

of trial.

A jury convicted Johnna Smith of robbery in the second degree. The trial court

sentenced her to five years and three months of confinement.

6

LAW AND ANALYSIS

On appeal, Johnna Smith argues that the trial court errantly allowed Detective Jerry Hensley to testify, in violation of ER 402 and 404(b), about his earlier contacts with Smith. Smith also contends that the State failed to present sufficient evidence to support her conviction for second degree robbery. We disagree with both arguments.

Jerry Hensley Testimony

Johnna Smith contends the trial court erred by denying her motion in limine to preclude Detective Jerry Hensley from testifying about his earlier contacts with Smith. She claims the testimony violated ER 402 and 404(b) because the evidence was irrelevant, the danger of unfair prejudice outweighed any probative value of the testimony, and the testimony covered inadmissible evidence of prior crimes. The State responds that the trial court did not abuse its discretion when admitting Detective Hensley's testimony because the testimony did not reference Smith committing wrongs and, even if Hensley's comments referred to other wrongs, the State offered the testimony for identity and not to show Smith acted in conformance with earlier misdeeds. We address separately the arguments forwarded under each evidence rule.

*ER 402*

Johnna Smith focuses her assignment of error with regard to evidence rulings on ER 404(b). Nevertheless, she also mentions violations of ER 402 and 403.

A discussion of ER 402 begins with ER 401. ER 401 declares:

7

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

In turn, ER 402 reads:

All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state. Evidence which is not relevant is not admissible.

This court reviews relevance evidentiary rulings for manifest abuse of discretion. *State v. Russell*, 125 Wn.2d 24, 78, 882 P.2d 747 (1994). Discretion is abused only when no reasonable person would have decided the issue as the trial court did. *State v. Rice*, 110 Wn.2d 577, 600, 757 P.2d 889 (1988).

Relevance presents a very low bar. *Mutual of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 729, 315 P.3d 1143 (2013). To be relevant, evidence must meet two requirements: (1) the evidence must have a tendency to prove or disprove a fact (probative value), and (2) that fact must be of consequence in the context of the other facts and the applicable substantive law (materiality). *Davidson v. Metropolitan Seattle*, 43 Wn. App. 569, 573, 719 P.2d 569 (1986). The relevancy of evidence depends on the circumstances of each case and the relationship of the facts to the ultimate issue. *Chase v. Beard*, 55 Wn.2d 58, 61, 346 P.2d 315 (1959), *overruled on other grounds, In re Marriage of Brown*, 100 Wn.2d 729, 675 P.2d 1207 (1984). Facts tending to establish a party's theory of the case will generally be found to be relevant. *State v. Mak*, 105

8

Wn.2d 692, 703, 718 P.2d 407 (1986).

Johnna Smith argues that Detective Jerry Hensley's testimony about earlier encounters with Smith provided no relevant information to the jury with respect to the theft at the Rite Aid store. We disagree. Identity of the thief was the primary issue at trial. Detective Hensley's earlier interactions with Smith tended to corroborate his identification of her in the Rite Aid surveillance video. Even though the two 2011 encounters only totaled thirty minutes, the contact supported his ability to identify Smith from the video.

## *ER 403*

ER 403 declares:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

When administering ER 403, we recognize that nearly all evidence worth offering in a contested case will prejudice one side or the other. *Carson v. Fine*, 123 Wn.2d 206, 224, 867 P.2d 610 (1994). Evidence is not rendered inadmissible under ER 403 just because it may be prejudicial. *Carson v. Fine*, 123 Wn.2d at 224. Under ER 403, the court is not concerned with ordinary prejudice. *Carson v. Fine*, 123 Wn.2d at 224.

Courts variously define "unfair prejudice" for purposes of ER 403. Such prejudice results from evidence of scant or cumulative probative force, dragged in by the heels for

9

the sake of its prejudicial effect. *United States v. Roark*, 753 F.2d 991, 994 (11th Cir. 1985). In determining prejudice, the linchpin word is "unfair." *State v. Rice*, 48 Wn. App. 7, 13, 737 P.2d 726 (1987). Washington cases agree that unfair prejudice is caused by evidence likely to arouse an emotional response rather than a rational decision among the jurors. *Carson v. Fine*, 123 Wn.2d at 223; *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 257, 744 P.2d 605 (1987); *State v. Cameron*, 100 Wn.2d 520, 529, 674 P.2d 650 (1983).

Under ER 403, the burden of showing prejudice is on the party seeking to exclude the evidence. *Carson v. Fine*, 123 Wn.2d at 225. A presumption favors admissibility under ER 403. *Carson v. Fine*, 123 Wn.2d at 225. Because of the trial court's considerable discretion in administering ER 403, reversible error is found only in the exceptional circumstance of a manifest abuse of discretion. *State v. Gould*, 58 Wn. App. 175, 180, 791 P.2d 569 (1990).

Johnna Smith argues that Detective Jerry Hensley's testimony only created an extraordinarily prejudicial implication that she was a person who had frequent run-ins with a detective whose work was focused on major crimes. We disagree. Nothing in Hensley's testimony implied that Smith was investigated or responsible for wrongdoing. As the State emphasizes, Hensley could have encountered Smith at a social or church function. Smith assumes a juror's emotions are aroused when the juror hears that a defendant had earlier interactions with law enforcement. Nevertheless, the jury never heard the context of Smith's contact with Hensely, leaving the testimony mundane.

10

Although evidence of some law enforcement interactions may be prejudicial if the officer

relates details, the circumstances in this appeal show little, if any, prejudice.

### ER 404(b)

Washington's ER 404(b) reads, in relevant part:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Boldface omitted.) A trial court's interpretation of ER 404(b) is a question of law that

this court reviews de novo. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

ER 404(b) prohibits evidence of past misdeeds solely to prove a defendant's criminal

propensity. *State v. Nelson*, 131 Wn. App. 108, 115, 125 P.3d 1008 (2006). Evidence of

prior bad acts is presumed inadmissible, and any doubts as to admissibility are resolved

in favor of exclusion. *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). ER

404(b) precludes evidence of defendant's other bad acts to show the defendant's

propensity for criminal activity. When demonstrated, however, such evidence may be

admissible for other purposes such as proof of motive, opportunity, intent, preparation,

plan, knowledge, identity, or absence of mistake or accident. *State v. Powell*, 126 Wn.2d

244, 258, 893 P.2d 615 (1995).

Johnna Smith contends the testimony by Detective Jerry Hensley violated ER

404(b). Detective Hensley testified that in 2011 he had personal contact with Smith two

11

times, each occasion lasting fifteen minutes. Through those contacts, Hensley became familiar with Smith's facial and body features. Detective Hensley testified that he identified Smith on the surveillance tape because of his contacts with her in 2011 and his involvement in creating the photomontage in this case. Even if a tenuous connection existed between contact with a detective and earlier bad acts, the trial court properly admitted Detective Hensley's testimony as proof of identity. The State offered the testimony to prove identity, a key issue at trial, not propensity to commit a crime.

### Sufficient Evidence

Johnna Smith contends the State failed to provide sufficient evidence to support her conviction for second degree robbery. The criminal code defines "robbery" as:

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

RCW 9A.56.190.

In her brief, Johnna Smith examines the legal standard for review of a sufficiency of the evidence challenge and then asserts the State failed to meet its burden at trial. She does not, however, isolate what element or elements of second degree robbery the State

12

purportedly failed to prove. Thus, we encounter difficulty in analyzing her contention.

Johnna Smith attacks the credibility of Detective Jerry Hensley's identification of her, criticizes Matthew McDaniels as unable to recall details of his encounter with her, critiques McDaniels because of his mistaking Smith's height, emphasizes that she lacked a mark on her neck at the time of trial, and describes the Rite Aid surveillance video as grainy. We consider these assaults on the State's evidence to go to the weight of the evidence for the jury to review, not the sufficiency of the evidence. The State presented positive identifications from both McDaniels and Hensley as to Smith being the thief.

Evidence is sufficient if a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). Both direct and indirect evidence may support the jury's verdict. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). This court draws all reasonable inferences in favor of the State. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). The State assumes the burden of proving otherwise unnecessary elements of the offense when such elements are included without objection in a jury instruction. *State v. Willis*, 153 Wn.2d 366, 374-75, 103 P.3d 1213 (2005). Only the trier of fact weighs the evidence and judges the credibility of witnesses. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

Relying on *State v. Vasquez*, 178 Wn.2d 1, 309 P.3d 318 (2013), Johnna Smith asserts that we must review whether Matthew McDaniel's certainty of identification was

13

reasonable and hold that it was not. In *Vasquez*, a store security guard found a forged social security card and permanent resident card in the defendant's wallet when searching the defendant, a suspected shoplifter. Our Supreme Court reversed two convictions of forgery because the State failed to prove sufficient evidence of intent. The only evidence of intent to defraud was the defendant's possession of the forged cards. Our Supreme Court held that inferring intent from possession relieved the State of its burden to prove all elements of the crime.

*State v. Vasquez* lacks relevance to this appeal. *Vasquez* involved the sufficiency of evidence regarding intent to defraud, not sufficiency of evidence of the identity of a shoplifter.

## CONCLUSION

We affirm the conviction of Johnna Smith for second degree robbery.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, C.J.

WE CONCUR:

Pennell, J.

Lawrence-Berrey, J.

14