IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON, )
) No. 33832-1-III
Respondent, ) (consolidated with 33296-9-III
) and 33840-1-III)
v. )
)
LELBERT LOUISE WILLIAMS, )
)
Appellant. ) PUBLISHED OPINION
)
_____ )
)
In re the Matter of Personal Restraint of )
)
LELBERT LOUISE WILLIAMS, )
)
Petitioner. )

FEARING, C.J. — Our appeal measures the sufficiency of evidence for purposes of

the State establishing the value of stolen property. We also address under what

circumstances a trial court may deny a drug offender sentencing alternative (DOSA)

sentence. We hold that the State lacked sufficient evidence to convict appellant Lelbert

Williams of second degree possession of stolen property because the victim presented

testimony of a rough estimate of value without identifying the basis for the estimate. We

further hold that the trial court properly denied a request for a DOSA sentencing

alternative because of the lack of any substance abuse. We remand for resentencing, however, based on the vacation of one of Williams' four convictions. We dismiss Williams' related personal restraint petition.

## FACTS

The prosecution of Lelbert Williams arose from a series of furtive behavior by Williams. In May 2014, the Spokane Police Department received calls complaining of a man stalking through backyards in a west Spokane neighborhood. On May 6, 2014, one caller, Brad Dawson, observed the man carrying two sports duffel bags and possibly a screwdriver. Also on May 6, 2014, someone burglarized the home of David and Joan Nelson. Joan Nelson's brother, John Johnston, drove through the neighborhood in an attempt to apprehend the burglar. After inspecting five homes, Johnston espied a kneeling gentleman, with two duffels bags astride, employing a screwdriver to pry open a lock on a storage facility. The man fled when Johnston yelled. Johnston called 911 and tracked the fleer as the fleer scattered from yard to yard and hid in changing locations. Johnston kept contact on his cellphone with Spokane police.

Spokane police officers arrived and apprehended the burglar, Lelbert Williams. Law enforcement officers found a duffle bag, a Bluetooth speaker, a laptop, running shoes, a jacket, and two rings belonging to Adam Macomber in the possession of Williams. Days earlier Macomber had discovered the property missing from his apartment.

2

PROCEDURE

The State of Washington charged Lelbert Williams with five crimes:

(1) residential burglary, (2) second degree burglary, (3) attempted second degree

burglary, (4) attempted theft of a motor vehicle, and (5) possession of stolen property in

the second degree. The State added the final charge near the date of trial.

During trial, Adam Macomber identified those items missing from his apartment.

The State then asked Macomber to value his stolen property:

> Q. Show the jury again. Were you able to assess a value of an amount that all that property was worth at the time it was taken?
> A. I could give a rough estimate.
> Q. And I know that you stated there was a laptop computer.
> A. Mm-hm.
> Q. A mobile hotspot.
> A. Mm-hm.
> Q. And number of other items including your rings, the Bluetooth speaker, and the miscellaneous items you work out in, including your tennis shoes there.
> A. Mm-hm.
> Q. What value would you total your loss at being?
> A. I would say roughly $800.

Report of Proceedings (RP) at 278. The State presented no other testimony of the value

of stolen goods. The trial court denied a request by Lelbert Williams for a lesser included

offense instruction with regard to second degree possession of stolen property. The jury

found Williams guilty of first degree criminal trespass, attempted second degree burglary,

vehicle prowling, and second degree possession of stolen property. The jury acquitted

3

Williams of residential burglary. Our appeal concerns the possession of stolen property conviction.

At sentencing, Lelbert Williams requested a DOSA. He claimed he committed his last violent offense over ten years earlier. The trial court denied the DOSA on the basis that the court lacked any information of Lelbert Williams abusing controlled substances. The trial court sentenced Williams to the standard range for his crimes and ran the sentences for all crimes concurrently. Our appeal also addresses the denial of a DOSA sentence.

This court consolidated an appeal and a personal restraint petition filed by Lelbert Williams.

## LAW AND ANALYSIS

### Sufficiency of Evidence

Lelbert Williams challenges his conviction for second degree possession of stolen property. We agree that the State presented insufficient evidence to convict Williams of second degree possession and thus reverse this conviction.

Evidence suffices for a conviction if a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). Both direct and indirect evidence may support the jury's verdict. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). This court draws all reasonable inferences in favor of the State. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136

4

(1977). Only the trier of fact weighs the evidence and judges the credibility of witnesses. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

The State charged Lelbert Williams with second degree possession of stolen property under RCW 9A.56.140 and .160. The former statute defines possessing stolen property. The latter statute reads, in relevant part:

> (1) A person is guilty of possessing stolen property in the second degree if:
> (a) He or she possesses stolen property, other than a firearm as defined in RCW 9.41.010 or a motor vehicle, which *exceeds seven hundred fifty dollars* in value but does not exceed five thousand dollars in value;

(Emphasis added.) RCW 9A.56.010(21) defines "value" for purposes of the crime, as:

(a) "Value" means the market value of the property or services at the time and in the approximate area of the criminal act.

The key words of witness Adam Macomber were "I could give a rough estimate." RP at 278. "I would say roughly $800." RP at 278. We find this testimony fails to show beyond a reasonable doubt the value of stolen property to exceed $750.

"Value" for the purposes of theft means the market value of the property at the time and in the approximate area of the theft. "Market value" is the price which a well-informed buyer would pay to a well-informed seller, when neither is obliged to enter into the transaction. *State v. Clark*, 13 Wn. App. 782, 787, 537 P.2d 820 (1975). In a prosecution, value need not be proved by direct evidence. *State v. Hermann*, 138 Wn. App. 596, 602, 158 P.3d 96 (2007). Rather, the jury may draw reasonable inferences

5

from the evidence, including changes in the condition of the property that affect its value. *State v. Melrose*, 2 Wn. App. 824, 831, 470 P.2d 552 (1970). In determining the value of an item, evidence of price paid is entitled to great weight. *State v. Hermann*, 138 Wn. App. at 602 (2007).

The State may suggest that, since Lelbert Williams did not object to Adam Macomber's valuation testimony or since Williams presented no competing testimony, Macomber's testimony suffices to convict. We disagree. The trial court reasonably would have overruled any objection, since Adam Macomber could testify to a value of the stolen property as its owner. The owner of a chattel may testify to its market value without being qualified as an expert on valuation. *McCurdy v. Union Pacific Railroad Co.*, 68 Wn.2d 457, 468, 413 P.2d 617 (1966); *State v. Hammond*, 6 Wn. App. 459, 461, 493 P.2d 1249 (1972). This principle does not end our inquiry, however. The State still bears the burden of establishing each of the elements beyond a reasonable doubt. *State v. W.R.*, 181 Wn.2d 757, 762, 336 P.3d 1134 (2014).

The parties rely on two Washington decisions, both of which assist Lelbert Williams: *State v. Hammond*, 6 Wn. App. 459, and *State v. Ehrhardt*, 167 Wn. App. 934, 276 P.3d 332 (2012). *State v. Hammond* addressed the admissibility of an owner's valuation testimony concerning the worth of a diamond ring and whether the jury could consider such testimony when determining if the stolen items had a combined value exceeding $75. The State charged the defendant with grand larceny for having stolen

6

five rings in excess of $75. All of the rings were introduced into evidence as exhibits and were before the jury for their consideration. Victim McDaniels was the only witness to testify concerning the value of the five rings. She testified that three rings were "cheap junk jewelry," worth only a few dollars. *State v. Hammond*, 6 Wn. App. at 460. She added that she paid approximately $25 to $29 in 1968 for a sapphire ring, the fourth ring.

Appellant Dale Hammond challenged the admissibility of testimony concerning the fifth ring, a diamond. The victim testified she had owned the ring for thirty years. During direct examination, the following exchange took place:

> Q [By the prosecutor] Now, again, I understand that you are not trying to sell the rings, but do you have an idea as to the approximate *fair market value* of them?
> A [By the owner-witness] Well, I am well satisfied that you couldn't buy a ring like this—
> [Defense counsel] I object.
> THE COURT: She may answer.
> Q [By the prosecutor] Go ahead, Mrs.—
> A [By the owner-witness] For $600, I know.

*State v. Hammond*, 6 Wn. App. at 460 (emphasis added) (alteration in original). The trial court ruled the testimony admissible on the ground that the jury could attach such weight to the testimony as it deems proper.

The Supreme Court affirmed the trial court in *State v. Hammond*. The high court noted that the prosecution specifically asked the victim as to the fair market value of the diamond ring, not a replacement cost. The court then deducted the amount of the value of the other four rings and concluded that the State needed to prove the diamond ring was

7

worth at least $50. The fact that the diamond ring had an estimated value of $600 placed the value of all stolen goods above $75.

*State v. Hammond* possesses distinguishing features. The testimony of the victim that someone could not buy the ring for $600 inferred that the ring had a minimum value of $600. Adam Macomber gave no minimum value for the goods stolen by Lelbert Williams. In *Hammond*, the value of the goods well exceeded the $75 minimum. Adam Macomber's rough estimate of $800 barely exceeded the $750 minimum. The *Hammond* prosecutor asked the victim to disclose a "fair market value." 6 Wn. App. at 460. Williams' prosecutor only requested a "value."

In *State v. Ehrhardt*, 167 Wn. App. 934 (2012), the State charged Joseph Ehrhardt with second degree burglary and second degree theft. The Court of Appeals reversed the theft conviction for a lack of evidence of the value of the taken goods. Ehrhardt purloined tools from Brian Glaze's shed. Glaze, who had four years of experience working in construction, bought the air compressor for $100 five or six years before trial, but he never used it and its condition remained brand new. He testified that he purchased the pressure washer for $199 within the last year. Glaze also testified that he acquired the items in the stereo wiring box for over $200 or $300 throughout the years, but the items were "just bits and parts and pieces," and were now worth $100. *State v. Ehrhardt*, 167 Wn. App. at 938. Glaze further testified that the rotary hammers belonged to his employer, that the hammers cost about $450, and that they were about three years old.

8

He testified that the nail guns also belonged to his employer, the guns cost in the $230 range each, and they were about three years old.

On appeal Joseph Ehrhardt contended that the evidence was insufficient to convict him of second degree theft because the State failed to prove that the items, over which Ehrhardt exerted unauthorized control, held a value of more than $750, an element of second degree theft. The court agreed. Glaze's testimony as to the value of the items was not sufficient because Glaze testified only as to their cost. The State provided insufficient evidence of the condition of the items at the time of the theft that would enable the jury to determine their market value.

We note that, in *State v. Ehrhardt*, the State elicited more evidence regarding the condition of the property, the date of purchase, and the purchase price than the State provided in Lelbert Williams' trial. The *Ehrhardt* court still reversed the conviction.

The dissent suggests that, since the law qualifies the owner of the personal property to testify to the value of the property, the owner's testimony suffices to convict no matter the nebulousness of the testimony. Although *State v. Hammond*, 6 Wn. App. at 461 (1972), may suggest such to be the rule, no Washington decision has directly established such a proposition. No case stands for the proposition that, because the State offered admissible evidence relevant to the charge, the State necessarily proved beyond a reasonable doubt the elements of the charge. If the dissent's proposition holds true, this court wrongly decided *State v. Ehrhardt*, 167 Wn. App. 934 (2012). If the dissent's

9

reasoning proves correct, sufficiency of evidence questions would transfigure into mere evidentiary questions. The dissent's reasoning ignores the need to convict beyond a reasonable doubt.

Foreign cases support our conclusion. *State v. Fontenot*, 2016-226 (La. App. 3 Cir. 11/2/16), 207 So. 3d 589, illustrates what evidence may be sufficient. The *Fontenot* court held the evidence sufficient to prove that a truck taken by defendant was valued at $1,500 or more, as required to support conviction for theft of a motor vehicle valued at $1,500 or more. The truck's owner testified that, at the time of the theft, all systems of the truck operated efficiently and the truck possessed four good tires. The owner declared that he paid $2,100 for the truck five years earlier. The owner admitted that he was not completely certain of the truck's value and that he would not be surprised if the rough trade value of the truck was $1,400. Nevertheless, he also stated that his estimate of $1,800 was on the low end given that the average trade value for the model was $2,100. Adam Macomber provided no low end estimate, gave little description of the property, did not disclose the purchase price of the property, and testified to no trade value.

A series of Florida cases address whether the State presented sufficient evidence of value to convict. In *Sanchez v. State*, 101 So. 3d 1283, 1285 (Fla. Dist. Ct. App. 2012), the reviewing court reversed a conviction. The victim of the theft briefly testified about the value of the property taken. The prosecutor asked her, "'If you had to assign

monetary value to this jewelry, what would it be?'" The victim responded, "'I don't know, a couple of hundred dollars maybe.'" 101 So. 3d at 1285. She did not know the value of a camera purchased by her husband, but guessed that it was worth "'maybe a hundred dollars.'" 101 So. 3d at 1285. When questioned about two stolen remote controls, the victim twice stated that she did not know their value, but speculated a price of $20 each. The court declared that when the owner estimates the value and no other proof is presented, the owner's evidence is insufficient to prove fair market value.

In *Gilbert v. State*, 817 So. 2d 980 (Fla. Dist. Ct. App. 2002), the State asked the owner to "roughly" approximate the value that the victim had paid for the property that was stolen. The owner testified that a video game system cost two hundred dollars, that headphones cost forty-five dollars, and that a VCR was "like one hundred." The owner also added that she had owned the items for a couple of months. The court held that the State failed to establish that the total market value of the stolen property exceeded $300, in part because of the phrasing of the question. Similarly, Adam Macomber's answer employed the word "rough."

In *Blount v. State*, 30 So. 3d 662 (Fla. Dist. Ct. App. 2010), the State needed to prove the value of the stolen property to be $300 or more. The loss-prevention officer of the victim store testified that the stolen TV and DVD player's prices were "about $200, $300" and "$80," respectively. *Blount v. State*, 20 So. 3d at 663. The court apparently seized on the word "about" in the witness' testimony. The court ruled that the loss-

11

prevention officer's estimates were insufficient evidence to prove the value of the TV and DVD player. The court reduced the conviction to a lesser charge.

In *Cleveland v. State*, 773 So. 2d 1205 (Fla. Dist. Ct. App. 2000), the reviewing court reversed a conviction because of the failure to establish the value of the stolen goods. Under the charged crime, the value needed to be above $300. The victim testified that a gold chain and ring were taken from him by the defendant. The victim testified that he thought the jewelry was worth approximately $800. On cross-examination, the victim admitted that the $800 was an estimate as he did not remember purchasing the jewelry and he did not know how much the jewelry weighed.

In *Bagnara v. State*, 189 So. 3d 167 (Fla. Dist. Ct. App. 2016), the court held that the State did not sufficiently prove that the value of the riding lawn mower was more than $300 when it was stolen. The victim testified as to the approximate purchase price, the mower's general condition at the time of the theft, and only guessed the mower was worth $300 in its stolen condition. The police officer testified that he valued the mower in his report at $500 based on his guess as to what a used riding mower would cost and admitted that he made this estimate without actually seeing the mower or knowing anything about its condition.

In reaching our conclusion in this appeal, we emphasize that the State asked the victim, Adam Macomber, to testify to a "value" of the property, not to a "market value" or "fair market value" of the property. Macomber did not testify to the basis of his

12

opinion of value. For all we know, he used the purchase price of the goods, the replacement cost of the goods, or some intrinsic value to himself.

Adam Macomber testified to a "rough estimate" value of the stolen goods to be $800, a figure close to the minimum amount required to convict of $750. Macomber listed the property taken from him, but did not describe the condition of the property when stolen. He did not disclose the purchase date or the purchase price of each item.

We hold the remedy for the insufficiency of evidence to be a remand for dismissal of charge for possession of stolen property in the second degree. The trial court refused to instruct the jury on the lesser included offense of third degree possession. This court lacks authority to direct the entry of judgment of the lesser included offense if the jury was not instructed on that offense. *In re Personal Restraint of Heidari*, 174 Wn.2d 288, 294, 274 P.3d 366 (2012).

### Jury Instruction

Lelbert Williams argues that the trial court committed manifest constitutional error by failing to include an intent instruction for the charge of attempted second degree burglary. The State responds that the trial court gave such an instruction. We agree with the State that the record establishes the trial court delivered the instruction.

### DOSA Sentence

Lelbert Williams assigns error to the trial court's purported failure to consider his request for a DOSA sentence. We reject this assignment in part because Williams

13

mistakenly argues that the trial court uncategorically failed to consider a DOSA sentence.

The legislature created a drug offender sentencing alternative to enable eligible offenders a chance for substance abuse treatment and a reduced sentence. *State v. Grayson*, 154 Wn.2d 333, 337, 111 P.3d 1183 (2005). A trial court has discretion to use the alternative. RCW 9.94A.660(3). Generally, a court's decision to grant the sentencing alternative is unreviewable. *State v. Grayson*, 154 Wn.2d at 338. Nevertheless, a defendant can always seek review of the trial court's procedure in implementing the sentence. *State v. Grayson*, 157 Wn.2d at 338. With regard to a DOSA, a court abuses its discretion if it refuses to consider the alternative or refuses to consider the option for a certain class of offenders. *State v. Grayson*, 154 Wn.2d at 342. A trial court also abuses its discretion if it exercises discretion on an impermissible basis, such as by denying the sentencing alternative because of the defendant's race, sex, or religion. *State v. Khanteechit*, 101 Wn. App. 137, 138 n.2, 5 P.3d 727 (2000).

The trial court did not adamantly refuse to consider a DOSA for Lelbert Williams. In deciding to grant or deny a DOSA, the trial court must consider the evidence before it. Lelbert Williams presented no evidence of drug use, let alone that substance abuse led to his crimes. Therefore, the trial court did not abuse its discretion when denying a DOSA sentence.

Lelbert Williams also argues that the trial court could have continued the sentencing hearing and requested an evaluation to determine if he qualified for a DOSA

14

sentence. While we agree that the trial court could request an evaluation, the law does not demand granting a request for an evaluation. RCW 9.94A.660(4).

## Personal Restraint Petition

Lelbert Williams filed a personal restraint petition (PRP) wherein he raises seven purported errors. We will dismiss a PRP unless the petitioner establishes a violation of a right resulting in prejudice. *In re Personal Restraint of Nichols*, 171 Wn.2d 370, 373, 256 P.3d 1131 (2011). The petitioner must show by a preponderance of the evidence and not mere conclusory allegations that the error caused him actual prejudice. *In re Personal Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004). The rationale for this standard comes from the need for "finality of litigation." *In re Personal Restraint of Stockwell*, 179 Wn.2d 588, 597, 316 P.3d 1007 (2014).

Although ostensibly raising seven issues, Lelbert Williams has not provided sufficient guidance for the court to address his claimed errors. Thus, we dismiss his personal restraint petition.

Lelbert Williams suggests a Fourth Amendment violation because an informant's tip lacked sufficient indicia of reliability. He does not, however, identify the insufficiency of the informant's tip. The State also correctly notes that the arresting officer's interactions with Williams presented sufficient suspicion for a stop.

15

Lelbert Williams insinuates a *Brady* violation. He contends that the State withheld impeachment evidence. Nevertheless, he fails to identify any evidence the State withheld.

Lelbert Williams argues that the trial court or the State violated his Sixth Amendment confrontation rights by failure to disclose an informant's identity. The record, however, shows the existence of no confidential informant.

Lelbert Williams argues that his conviction resulted from perjured testimony that the State willingly used. Nevertheless, Williams fails to isolate the purported perjured testimony.

Lelbert Williams argues that his convictions for attempted second degree burglary and his conviction for second degree possession of stolen property lack sufficient evidence. We previously agreed with the lack of evidence to sustain the second degree possession of stolen property conviction. With regard to the attempted burglary, we discern sufficient evidence to convict. John Johnston testified that Williams tried to pry open a shed door. The police found Williams with property stolen from another individual. The jury could reasonably infer that he attempted to pry open the door to steal additional property.

Lelbert Williams argues the State's late filing of the possession of stolen property charge prejudiced him. Since we reverse this conviction, Williams suffers no prejudice.

16

Finally, Lelbert Williams argues jury bias. He may claim that some jurors were crime victims and that others knew the prosecutor. Nevertheless, he does not identify the purported biased jurors to enable review.

## CONCLUSIONS

We reverse Lelbert Williams' conviction for second degree possession of stolen property. We therefore remand for resentencing based on the vacation of this one conviction. We deny the State an award of costs against Lelbert Williams since he prevailed on a major claim on appeal.

_____
Fearing, C.J.

I CONCUR:

_____
Pennell, J.

Nos. 33832-1-III; 33296-9-III; 33840-1-III

KORSMO, J. (dissenting) — This court does not get to weigh adverbs and come to a different view of the evidence than the jury did. The question here is whether the evidence was sufficient to support the verdict given the victim's summation of the value of the items taken from him. Since the lay property owner does not need to establish a foundation for his valuation testimony, we should affirm.

"Of course, the owner of a chattel may testify as to its market value without being qualified as an expert in this regard." *McCurdy v. Union Pac. R.R.*, 68 Wn.2d 457, 468, 413 P.2d 617 (1966). This principle has a long history in Washington. *E.g.*, *Ingersoll v. Seattle-First Nat'l Bank*, 63 Wn.2d 354, 358, 387 P.2d 538 (1963); *Wicklund v. Allraum*, 122 Wash. 546, 547, 211 P. 760 (1922); *Alexander v. Al G. Barnes Amusement Co.*, 105 Wash. 346, 347, 177 P. 786 (1919). These civil cases trace the rule to Professor Wigmore. *See Wicklund* at 547 (citing to 1 JOHN HENRY WIGMORE, A TREATISE ON THE SYSTEM OF EVIDENCE IN TRIALS AT COMMON LAW § 716 (1904)).

Using this same authority, although referencing a then more current edition of

Wigmore's treatise, this court applied the principle to the criminal law in *State v.*

*Hammond*, 6 Wn. App. 459, 461, 493 P.2d 1249 (1972). The rule was stated:

Professor Wigmore states the rule to be:

> The *owner of an article*, whether he is generally familiar with such
> values or not, ought certainly to be allowed to estimate its worth; the
> weight of his testimony (which often would be trifling) may be left to the
> jury; and courts have usually made no objections to this policy.

(Footnote omitted.) 3 J. Wigmore, Evidence § 716, at 56 (Chadbourn rev.
1970).

*Hammond*, 6 Wn. App. at 461. *Hammond* was not the first instance in which a crime

victim was permitted to express an opinion concerning valuation of his own property.

*See, e.g., State v. Duncan*, 148 Wash. 57, 59-60, 268 P. 139 (1928); *State v. Toliver*, 5

Wn. App. 321, 328, 487 P.2d 264 (1971); *State v. Melrose*, 2 Wn. App. 824, 830-31, 470

P.2d 552 (1970). In *Melrose* we expressly stated: "Evidence of value in criminal cases is

proved in the same way as in civil cases." 2 Wn. App. at 831.

Since *Hammond*, the cases have continued to permit victims to express their

opinions concerning the valuation of their own property without establishing a

foundational basis for the opinion. *E.g., State v. Walker*, 75 Wn. App. 101, 104, 879 P.2d

957 (1994); *State v. Trepanier*, 71 Wn. App. 372, 374, 858 P.2d 511 (1993). No case

2

suggests that victims must have a foundation for their valuation.[1] As it has been for at least the past century, a lack of basis for the testimony is merely a question of weight for the jury. Oftentimes a victim will explain the basis for her opinion or the prosecutor will bring in other supporting testimony. *E.g., Walker*, 75 Wn. App. 101 (detective testified to book value of vehicle that was less than victim's valuation). However, there is no requirement that the victim's testimony be supplemented with foundational testimony or corroborated by other witnesses.

The majority errs in its reading of *State v. Ehrhardt*, 167 Wn. App. 934, 276 P.3d 332 (2012). There the victim testified concerning property taken from him as well as the value of property belonging to his employer that had also been taken. *Id.* at 938. Both types of property needed to be valued in order to exceed the $750 statutory valuation threshold. Without controversy or challenge, the victim identified the value of his property as being $399. *Id.* at 945-46. He also testified to the purchase price, three years earlier, of the construction property belonging to his employer, but did not testify to its current value. *Id.* In this circumstance, a divided panel of Division Two found that there was insufficient evidence of current value. *Id.* at 946-47.

---

[1] My research indicates that there are dozens of unpublished cases involving testimony from victims concerning their value of their property. This is not a controversial topic.

3

*Ehrhardt* does not aid the majority for two different reasons. First, and most importantly for this case, the victim there was a competent witness with respect to the value of his own property. That also is our situation here. Second, the *Ehrhardt* victim never provided a current valuation for the remaining property belonging to his employer.[2] Thus, the question of his competence to express an opinion on that property never arose, nor was the sufficiency of that testimony at issue given the failure to opine on the current value. Again, this is totally unlike our situation.

The question for the jury was whether the State established that Mr. Williams possessed more than $750 of stolen property. There was such evidence in the record. Mr. Macomber testified his property was "roughly" worth $800. $800 exceeds $750. Ergo, the evidence was sufficient.

Despite the seeming simplicity of this problem, the majority strains to disregard this testimony instead of recognizing that the weight of the evidence was a question for the jury to determine.[3] It curiously emphasizes the "roughness" of Mr. Macomber's

---

[2] The *Ehrhardt* majority and dissent divided over the issue of whether purchase price, without consideration of the current condition of the property due to depreciation, was an adequate measure of current value.

[3] Stunningly, the majority rejects this argument on the basis that "sufficiency of evidence questions would transfigure into mere evidentiary questions." Majority at 10. They normally are. The test for sufficiency of evidence is found in *Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Specifically, *Jackson* stated the test for evidentiary sufficiency to be "whether, <u>after viewing the evidence</u> in the light most favorable to the prosecution, any rational trier of fact <u>could have found</u> the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis added).

4

testimony. However, "roughly" is another way of saying "approximately." WEBSTER'S

THIRD NEW INTERNATIONAL DICTIONARY 1978 (1993). The word "approximately" can

be used by a victim without undercutting his valuation testimony. *See Toliver*, 5 Wn.

App. at 328 (victim testified that the value of his typewriter was approximately $100).

The jury apparently did not discount the $800 valuation given by Mr. Macomber merely

because it was "rough." The majority has no ability to discount or reweigh his

approximation.[4]

The majority also spends some time commenting that Mr. Macomber discussed

"value" rather than "fair market value." The jury did the same thing. The court's

instructions defined the word "value," not "fair market value." Clerk's Papers (CP) at

314 (instruction 27).[5] Similarly, the crime was defined in terms of "value." CP at 310

(instruction 23). The elements instruction told the jury that the prosecution needed to

prove that the "value" of the property stolen exceeded $750. CP at 311 (instruction 24).

It is unsurprising that the victim would be asked to give his opinion of the "value" of the

property. That was, after all, the question the jury needed to decide in this case. Since

---

[4] *See State v. Hill*, 123 Wn.2d 641, 644-45, 870 P.2d 313 (1994) (rejecting line of authority permitting appellate courts to undertake independent review of the evidence). We do not weigh the evidence under any circumstance. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). We similarly do not substitute our judgment for that of the trier of fact. *Hesperian*, 54 Wn.2d at 575.

[5] The jury was instructed that "value" meant "market value." CP at 314.

the jury was told that value equaled market value, the majority need not worry that the wrong topic was under discussion.

The majority usurps the role of the jury in determining how much weight to accord the victim's testimony. Any purported deficiencies in that testimony were for the jury to weigh. Since the majority reweighs the evidence, I dissent.

Korsmo, J.